**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Rickie SIMS, Defendant–Appellant.**

No. 54538.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 27, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 24, 1989.

Application to Transfer Denied
March 14, 1989.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Chief Judge.

Appellant, Rickie Dale Sims, appeals from his jury conviction on eight counts of robbery in the first degree, § 569.020 RSMo; one count of attempted robbery, § 564.011 RSMo; and nine counts of armed criminal action, § 571.015 RSMo. He was sentenced to life imprisonment on robbery counts I and XIII, to fifteen years on attempted robbery Count XIX and to twenty years on all other counts. The life sentences to run consecutively and the terms of years concurrently with one or the other life sentence. We affirm his conviction.

On July 21, 1987 appellant was charged by indictment on nine counts of robbery, one count of attempted robbery and ten counts of armed criminal action in the Circuit Court of the City of St. Louis. The indictment alleged the appellant engaged in ten separate criminal episodes on the City of St. Louis' southside between May 24, 1987 and June 14, 1987. Appellant moved to have the offenses severed. The motion was denied. Appellant also made a motion in limine to prevent the state from referring to a prior arrest as an "arrest." This motion was granted. Appellant's second motion in limine, to exclude evidence of two brown paper bags taken from him in the prior arrest was denied. The cause was heard before a jury on January 19–21, 1988. Appellant was acquitted on two counts (Counts XVII and XVIII) but convicted on the other eighteen counts. Appellant raises three points on appeal.

First, appellant contends the trial court erred in overruling his motion in limine, objections and motion for mistrial in closing argument concerning his prior arrest while in possession of two paper bags. Appellant moved in limine to exclude evidence of brown paper bags seized more than a month prior to the robberies, on the theory that they were too far removed in time from the crimes charged and that no similarity was shown between the bags seized and the bags the witnesses would testify were used in the robberies. The motion was denied. At trial, appellant did not object to testimony concerning the brown paper bags when offered. To preserve error for appeal, objections to evidence must be timely and made with sufficient specificity to advise the trial court of the ground or reason for excluding evidence. *State v. Matthews*, 748 S.W.2d 896, 897–898 (Mo.App.1988). A motion in limine does not relieve a defendant of the duty to make a timely objection at trial. *State v. Silcox*, 694 S.W.2d 755, 756 (Mo.App.1985). Because appellant did not object at trial, our review is restricted to plain error. Rule 29.12.

The plain error rule should not be routinely invoked. *State v. Jordan*, 627 S.W.2d 290 (Mo. banc 1982). "Under the plain error rule, the court will set aside a lower court ruling only when it affects the rights of the accused to the extent of manifest injustice or miscarriage of justice if left uncorrected." *State v. Sandles*, 740 S.W.2d 169, 177 (Mo. banc 1987). When guilt is established by overwhelming evidence, no injustice or miscarriage of justice will result from a refusal to invoke the plain error rule. *State v. Goode*, 721 S.W.2d 766, 770 (Mo.App.1986).

We find overwhelming evidence established appellant's guilt. Appellant signed a written confession in which he described his involvement in ten criminal episodes. Appellant does not attack the validity of this confession on appeal. Further, in each of the eight episodes in which

he was convicted, a witness positively identified the appellant, either in court or previous to trial.

Appellant also alleges error in prosecutor's closing argument in which the following was said.

MR. WARREN: Ladies and gentlemen of the jury, your Honor, Ms. Boresi:

This has been a rather swift two days and we've had a lot of witnesses who have come in to testify. What I say now is the same as what I told you during voir dire—what I say now and what Ms. Boresi says is not evidence. What you heard was the evidence, what you heard from that witness chair, and you heard a lot of witnesses, something like twenty-odd witnesses, that came in Tuesday and Wednesday to testify, they told you what happened between, well, actually starting back on April 14th when Susan Dougherty arrested the defendant—

MS. BORESI: Your Honor, may we approach the bench?

(Thereupon, the following proceedings are had at the bench out of the hearing of the jury:)

MS. BORESI: Your Honor, at this point I will have to object to Mr. Warren using the word "arrest" in his closing argument, by virtue of my motion in limine that the State not use the word arrest; it's highly prejudicial to the jury and I would ask for a mistrial at this time.

THE COURT: I assume you did that by accident?

MR. WARREN: Absolutely, I meant to say detain for investigation. It was definitely my mistake the use of that word.

MS. BORESI: Whether or not it was intention or nonintentional, the prejudice has been done to Mr. Sims and the jury heard the word. I don't think there's a curative instruction that would be sufficient—the jury has already been tainted and at this point in time I would ask for a mistrial.

THE COURT: Denied. Overruled. do you want me to instruct the jury to disregard Mr. Warren's last statement?

MS. BORESI: Yes, your Honor.

(Proceedings resumed before the jury:)

THE COURT: Ladies and gentlemen, the last statement made by Mr. Warren was not in evidence and the objection made by Ms. Boresi has been sustained by the Court. You are to disregard the last statement in reference to any actions taken by Detective Dougherty.

MR. WARREN: On April 14th, Detective Dougherty told you, she came in here and testified that she talked to this man, the defendant, Rickie Sims. This is what he looked like at that time. Detective Dougherty told you she took from him and her partner took from him, in her presence, these two bags. They were folded up in his back pocket.

■■■ The declaration of a mistrial is a drastic remedy. It should be granted only in extraordinary circumstances where the prejudice to the defendant cannot be removed by any other means. *State v. Endres*, 741 S.W.2d 788, 791 (Mo.App.1987). The trial court has broad discretion in the declaration of a mistrial and its discretion should be overturned only when there is clear evidence that its discretion has been abused. *Id.*

Not every instance in which the prosecution exceeds the limits of proper argument requires a mistrial or reversal. Such excesses not only must be improper but they also must have been prejudicial to the defendant under the facts and circumstances of the particular case. Ordinarily, the court's admonition to the jury to disregard improper argument will be deemed to cure its prejudicial effect, *State v. Dees*, 631 S.W.2d 912, 918 (Mo.App.1982), unless the prosecutor, thereafter, fails to abandon the improper argument. *State v. Davison*, 601 S.W.2d 623, 627 (Mo.1980). In determining whether an improper argument was so clearly injurious that a new trial should be required, this court considers whether the trial court gave a cautionary instruction, whether the trial court gave a curative type instruction to disregard the improper comment and the strength of the

State's case. *State v. Price*, 541 S.W.2d 777, 779 (Mo.App.1976).

*State v. Cannady*, 660 S.W.2d 33, 40 (Mo. App.1983). While the erroneous admission of evidence of other crimes is presumed prejudicial, the mere mention of another offense in the closing argument of a criminal case is not per se prejudicial. *State v. Goodson*, 690 S.W.2d 155, 159 (Mo.App. 1985).

■ In the present case, the trial court gave MAI–CR3d 302.06, sustained the objection raised by the defendant and directed the jury to disregard the improper comment. We have already noted that the evidence of defendant's guilt is overwhelming. We find no manifest injustice or miscarriage of justice has resulted from the prosecutor's improper comment. The trial court did not abuse its discretion in denying appellant's motion for mistrial.

Appellant's second point alleges that the trial court erred in overruling appellant's motion to sever the ten offenses. Appellant's claim presents us with two distinct points for review. First, the court must examine whether the offenses were properly joined in the indictment. If joinder is found to have been proper, then this court must inquire whether the trial court abused its discretion in not severing the offenses and trying them together in a single prosecution. *State v. Clark*, 729 S.W.2d 579, 581 (Mo.App.1986). Joinder is either proper or improper under the law while severance is within the trial court's discretion. *Id.* "[J]oinder addresses the more basic question of what crimes can be charged in a proceeding while severance presupposes proper joinder and leaves to the discretion of the trial court the determination of whether prejudice may or would result if charges properly joined were tried together. *State v. Harris*, 705 S.W.2d 544, 547 (Mo.App.1986).

■ For joinder to be proper, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses. *Clark*, 729 S.W.2d at 579. Liberal joinder of charges is favored in order to achieve judicial economy, and the trial court's decision should be based solely on the state's evidence. *State v. Moore*, 745 S.W.2d 224, 227 (Mo.App.1987). Joinder of offenses is governed by Missouri Supreme Court Rule 23.05 which provides:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

Similar tactics are sufficient to constitute acts "of the same or similar character." *Harris*, 705 S.W.2d at 550.

■ In the instant case, all of the crimes occurred on the City of St. Louis' southside within a three week period. In each incident a man entered a business establishment and drew a handgun. He produced a bag from his waist area and demanded the employee fill the bag with money. In one of these incidents the bag was plastic. In eight others it was a paper bag. In one instance no bag was produced but that attempt at robbery was aborted at an early stage.

Appellant raises the differences between the robberies in an attempt to defeat joinder but is unpersuasive. The mood of a robber and the politeness of his manner may vary from robbery to robbery without defeating joinder. Especially as in this case, where the appellant admits in his oral and written confession, that his motive for the robberies was the support of a serious drug habit. While evidence of the right-handedness or lefthandedness of a perpetrator may indicate that the crimes were committed by different people, the fact that in some robberies the gun was held in the right hand and the bag in the left while in others the bag was held in the right and the gun in the left is not sufficient to render the character of the crimes dissimilar. Identical tactics are not required for proper joinder. Tactics which resemble or correspond in nature are all that is required. *Moore*, 745 S.W.2d at 227. The fact that in one crime two bags were used or that in another the perpetrator thought

it safer to order the clerk into the basement is not sufficient to defeat joinder, when all other factors are considered. The similarities in the incidents are sufficient to put the appellant's signature on them. This is all that is required. We hold that joinder was proper.

■ Where the charges against a defendant have been properly joined, a denial of a motion to sever will be set aside only if the defendant can show an abuse of discretion. *Moore*, 745 S.W.2d at 227. A motion to sever will be denied unless the defendant can make "a particularized showing of substantial prejudice." § 545.885.2 RSMo (1986). Substantial prejudice is defined as "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal." § 545.885.2 RSMo (1986).

■ In determining whether actual prejudice exists, the court should consider, among other factors, the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact can realistically distinguish the evidence and apply the law intelligently to each offense. *Clark*, 729 S.W.2d at 583.

■ In this case there are 20 counts arising from ten incidents. The evidence relevant to each incident is distinct and not complex. It consists primarily of direct testimony of those held at gun point. The trial court read the jury MAI-CR3d 304.12 instructing them to consider each offense separately. There is nothing in the record to indicate that the jury was unable to distinguish the evidence or apply the law to each offense.

Defendant argues substantial prejudice resulted from the joining of the offenses because weaker identifications of the defendant were buoyed by the stronger identifications. This argument lacks merit. The jury found the defendant not guilty on counts IVII and XVIII. On these counts the state's witness failed to make in court identifications of the defendant. This indicates the jury understood the impropriety of bootstrapping an identification in one

offense to another. We find the defendant has not carried his burden. Absent a particularized showing of prejudice, the trial court cannot be found to have abused its discretion.

■ Defendant's last point attacks the dismissal for cause of venireperson Ritter, No. 369. The transcript of voir dire contains the following:

Now, I want some confirmation from you folks. Raise your hand if you can consider the full range of punishment.

Miss Ritter, I'll start with you. I don't want to pick on anyone, but I don't see your hand?

VENIREMAN No. 369: I don't really think you should give him life because he didn't kill anybody, you know?

Q. Well, ma'am, the range of punishment goes up to life imprisonment.

A: I don't see how you can give anybody life in prison if they didn't kill anybody.

Q: All right. You're suggesting that you could not consider that?

A: No, I couldn't. I didn't know the law was like that. I thought the only time you got life was when you killed— and if you kill something then I think you deserve it.

Q: Okay. We totally respect your opinion.

Absolutely, as the Judge said, there is no right or wrong answers here. That's what we want to hear. We appreciate the fact that you can say exactly how you feel.

A: Well, I think it's wrong if he gets life.

Defense counsel later attempted to rehabilitate venireperson Ritter.

MS. BORESI: Mrs. Ritter, I believe you were the next response? If you were selected and chosen as a juror, would you be able to hear all the evidence in this case from the beginning to the end and everything in between and do you feel that after you have this package of evidence and when you go to the jury room, can you consider whether life imprisonment would be the appropriate

punishment according to the law; can you consider that in this case? I'm not asking you to follow it, but could you consider it as an option?

VENIREMAN No. 369: He would really have to have done something because I think life is kind of strong, but I guess I could consider it.

Q You don't know the facts.

A No.

Q Could you imagine a robbery wherein you might be able to impose a life sentence?

A Not unless he's hurt somebody real bad.

Q What is a lot—well, what if there's a lot of counts or a lot of charges against him; would you be able to consider a life sentence in that kind of situation?

A I guess I could consider it. I think life is such a long time, you know, the man didn't kill anybody, you know.

Q Thank you.

On appeal, the reviewing court will not disturb the trial court's determination of the qualifications of a prospective juror unless the record shows a clear and manifest abuse of discretion. *State v. Rodden*, 728 S.W.2d 212, 220 (Mo. banc 1987). A potential juror must be freely able to follow the law as declared by the trial court. *State v. Webb*, 725 S.W.2d 901, 903 (Mo. App.1987). Thus, the prosecution can demand that a potential juror be willing to consider the full range of penalties provided for the offense charged. *Id.*

Appellant argues that Miss Ritter's responses regarding her ability to impose a life sentence are equivocal. Therefore, he argues, her removal from the panel was in error under the United States Supreme Court's ruling in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1967). Under *Witherspoon*, unless a venireperson unequivocally and unambiguously states that they cannot and could not impose the death penalty in any case, regard-

less of the facts, he may not be excused from the panel for general feelings about the death penalty. *State v. Royal*, 610 S.W.2d 946 (Mo. banc 1981).

We can find no Missouri authority applying this principal to punishments less than death. Nor can we find authority indicating that this principle should not apply in cases with penalties less than death.[1] We need not determine the breath of *Witherspoon*, however. We believe this case is within the ambit of *State v. Royal*, 610 S.W.2d 946 (Mo. banc 1981).

In *Royal*, the Supreme Court upheld the dismissal of a potential juror who stated that she could not impose the death penalty in any case, regardless of the evidence. The juror later responded to a defense question regarding whether she could think about imposing the death penalty in extreme situations by stating "well, I think I would think about it. But I don't believe I could come to that decision." *Royal*, 610 S.W.2d at 949. In upholding the dismissal, the *Royal* court focused on the tenor of voir dire and the trial court's expertise in evaluating a venireperson's demeanor.

We find implicit in the trial court's act of excusing the juror in this case, a finding that the potential juror clearly and unequivocally expressed opposition to imposing a life sentence for any crime short of homicide. As in *Royal*, the tenor of the voir dire examination fully supports the finding of such opposition. In addition, we note that "because the trial court is in a far better position to measure and evaluate a venireman's demeanor rulings on challenges for cause lie generally within the sound discretion of the trial court." *State v. Bunch*, 656 S.W.2d 750, 752 (Mo.App. 1983). Taking these factors into consideration, the trial court did not abuse its discretion in finding the potential juror clearly and unequivocally expressed an opposition to imposing a life sentence. Therefore, we

---

1. The state cites *State v. Davis*, 653 S.W.2d 167 (Mo.1983), for the proposition that *Witherspoon* does not apply to non-death penalty cases. In *Davis*, the appellant was convicted of capital murder and was sentenced to life in prison. The *Davis* court held that the restrictions of *Witherspoon* do not apply to cases in which the law provides for the death penalty but the defendant receives a lesser sentence. It does not go as far as to say that *Witherspoon* is inapplicable where a defendant receives the maximum sentence allowable but one less than death.

find the trial court did not err in excusing the juror.

The trial court's judgment is affirmed.

DOWD AND CARL R. GAERTNER, JJ., concur.