**STATE of Missouri, Respondent,**

v.

**Michael R. FORISTER, Appellant,**

**Michael R. FORISTER, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 56153, 59100.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 21, 1992.

Henry B. Robertson, Cheryl Rafert, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant was convicted of one count of attempted robbery in the first degree, five counts of first degree robbery, and six counts of armed criminal action arising out of four separate criminal acts. Defendant was tried in the Circuit Court of St. Louis County and sentenced to a total of 75 years.

On January 7, 1988, defendant and two others, Tony Sillman and Kenneth Pilkerton, drove to the home of Ronald Hearst in West St. Louis County. Defendant and the others allegedly planned to burglarize the Hearst home. Defendant chose to burglarize the Hearst home because he had performed landscaping work there and knew that the home was secluded. At 11:00 p.m., Pilkerton rang the doorbell at the Hearst home. When the Hearst's daughter Nicole answered, Pilkerton displayed the gun, ordered Nicole to lie on the floor, and held a gun to the head of a houseguest, Lora Menz. Ron Hearst and his other daughter, Elizabeth, came downstairs and were told to lie on the floor. Pilkerton asked Mr. Hearst where his money was, and Mr. Hearst told him. Pilkerton repeatedly told Mr. Hearst not to "highball" him and then kicked Mr. Hearst in the side, breaking three ribs. Pilkerton left the Hearst home and drove off with defendant and Sillman.

On January 21, 1988, at approximately 3:00 p.m., defendant went with Kenneth Pilkerton and Sabrina Groves to the 19th Hole Lounge in South St. Louis County. Defendant remained in the car while Pilkerton and Groves went into the bar. Pilkerton displayed a gun, announced the holdup, and said "don't fucking highball me I have a gun." The pair took the money from the cash register and the purse of a bar patron, and then herded the three people in the bar into the ladies rest room. The pair then left the bar, and defendant drove them away from the scene.

At 5:50 p.m. of the same day, Pilkerton and Groves held up the Heine Meine Liquor Store on Lemay Ferry Road. The pair entered the store and brought a package of beer to the counter. Pilkerton displayed a gun and demanded that the store clerk give them the money in the cash register. Defendant waited in the car, and drove the pair away when the robbery was completed.

On January 26, 1988 defendant and Pilkerton drove to the St. John's Liquor Store in South St. Louis County. Pilkerton entered the store, brought a six pack of beer to the counter, displayed a gun and demanded that the clerk give him the money in the cash register. Again, defendant waited in the car, and they fled after Pilkerton exited the store.

In all four incidents, defendant drove a red 1963 Chrysler owned by Pilkerton.

On February 1, 1988, Sabrina Groves was arrested in the City of St. Louis on an outstanding bench warrant. She was later transferred to the custody of the St. Louis County Police Department and interrogated by Detective Anthony Griemel. She first told police that she was involved in two robberies with two men that she did not know. The officers told her that they did not believe that she did not know the other two. Thereafter, she told the officers that Pilkerton and defendant were involved with her in the robberies, that Pilkerton was the man with the gun, and defendant drove the car. Groves identified the vehicle used in the robberies as an old red Plymouth or Chrysler. Based on this information, the St. Louis County Police issued arrest orders for Pilkerton and the defendant.

Defendant was arrested in a south St. Louis tavern and transferred to the custody of the St. Louis County police. Defendant has a history of alcohol use and was drinking on the day of his arrest. At 10:30 p.m., defendant was advised of his Miranda rights and was questioned about his involvement in the robberies. Pilkerton gave statements about the Heine Meine, the 19th Hole and the St. John's Liquor Store robberies. Between midnight and 1:00 a.m. defendant was transported to St. Louis Regional Hospital complaining of delirium tremens and was later returned to the St. Louis County Jail. On the next day, February 2, defendant was questioned again at 7:00 a.m. Defendant waived his rights and gave a statement about the robbery of the Hearst residence. Defendant then made a taped statement to the officers.

The trial court, after a hearing, denied the defendant's motion to suppress statements made after his arrest. The case went to trial on December 5, 1988. The court denied defendant's motion to sever the offenses. Defendant was convicted on all twelve counts, and, thereafter, filed a motion for a new trial.

Defendant also filed a motion for post-conviction relief pursuant to Rule 29.15. The court dismissed the motion for being filed out of time.

Defendant appeals from his conviction and the denial of his Rule 29.15 motion. Defendant raises four points in this consolidated appeal. Defendant's first point alleges that there was insufficient evidence to find that he had the requisite intent to commit attempted robbery because he expected a burglary to take place at the Kenneth Hearst residence. His second point argues that the trial court erred in denying his motion to sever the offenses for trial. His third point alleges that statements taken after his arrest should have been suppressed because he was arrested without probable cause. Defendant's fourth point alleges that the trial court erred in dismissing defendant's Rule 29.15 motion as untimely.

I.

## INTENT TO COMMIT THE HEARST ROBBERY

In his first point on appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal. Specifically, defendant argues that he believed that a burglary would take place at the Hearst residence, and that he did not know that Kenneth Pilkerton was armed and capable of robbery.

Missouri Revised Statutes § 562.041 (1986) provides that "a person is criminally responsible for the conduct of another when ... (2) either before or during the commission of an offense, he aids or agrees to aid another person in planning, committing or attempting to commit the offense." Criminal responsibility for the acts of another does not require a common intent other than the promotion of the commission of an offense. *State v. Sims*, 684 S.W.2d 555, 557 (Mo.App.1984). A defendant does not need to possess the intent to commit the underlying felony in order to be convicted as a aider or abettor. *Id.*

In *State v. Workes*, 689 S.W.2d 782, 784–85 (Mo.App.1985), the defendant and a man

named Meyer kidnapped a woman and drove her to a park. On the way to the park, the two men forced the woman to commit acts of sodomy upon them in their truck. Once at the park, defendant remained in the truck while Meyer took the victim into the park and raped her. He argued that he could not be liable as an aider or abettor because he believed Meyer intended to sodomize, but not rape the victim. The court ruled that when the defendant embarked upon the course of criminal conduct with others, he became responsible for those crimes which he could reasonably anticipate would be part of that conduct. 689 S.W.2d at 785. The court found that the defendant assisted Meyer in bringing the victim to the park and in assaulting her on the way. Defendant knew that Meyer would further assault her in the park, and therefore, he had the culpable mental state to assist Meyer. The court found that the evidence was sufficient to convict defendant of rape. *Id.*

Defendant relies upon *State v. Reed*, 670 S.W.2d 545 (Mo.App.1984), to say that the evidence was not sufficient to support his conviction for the Hearst robbery. Defendant's argument is misplaced. In *Reed*, the conviction of an accomplice to first degree robbery was reversed because the evidence produced by the State did not prove that his co-defendant was armed. Unlike *Reed*, the evidence here shows that Pilkerton entered the Hearst home at gunpoint and that defendant drove the car to and from the Hearst's home.

Indicia of aiding and abetting include presence at the scene of the crime, flight therefrom, and association with others involved before, during, and after the commission of the crime. *State v. McGowan*, 789 S.W.2d 242, 243 (Mo.App.1990). Proof of any form of participation by defendant in the crime is sufficient to support a conviction. *Id.*

The evidence regarding defendant's involvement in the Hearst robbery was sup-plied by defendant's confession. It was the defendant who told Pilkerton and Sillman about the Hearst home and planned the burglary of it. Defendant drove the other two to the Hearst's home. He told police that when the two left the car and discovered there were people at home, Sillman immediately returned to the car, but Pilkerton went into the home. When Pilkerton returned to the car, defendant drove the three of them away. Defendant then went on to commit three other robberies with Pilkerton within the next three weeks. This evidence meets all of the indicia of aiding and abetting that was outlined in *McGowan*. We find that this proof was sufficient to make defendant responsible for the attempted robbery of the Hearst home. Defendant's first point is denied.

## II.

### THE MOTION TO SEVER

Defendant's second point on appeal is that the trial court abused its discretion by failing to sever the offenses for trial. Our analysis of this point is made difficult by the failure of defendant to include the written motion in the record on appeal. A motion to sever offenses must be in writing. Mo.Rev.Stat. § 545.885.2 (1986); Rule 24.07. However, our record of the motion is limited to the court's oral denial of the motion before the trial began, and the defendant's motion for a new trial. The record on appeal should contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented to the appellate court for decision. Rule 30.04(a).

When a defendant alleges that the trial court failed to sever counts, a reviewing court is presented with two distinct points for review. First, the court must examine whether the offenses were properly joined in the indictment. *State v. Sims*, 764 S.W.2d 692, 696 (Mo.App.1988). Second, if joinder is proper, then the court must inquire whether the trial court abused its discretion in not severing the offenses and trying them together in a single prosecution. *Id.* Joinder is either proper or

improper under the law, but severance is within the trial court's discretion. *Id.*

■■■■ The law of joinder is codified in the Missouri Statutes and the Supreme Court Rules. Mo.Rev.Stat. § 545.140.2 (1986); Rule 23.05. Section 545.140.2 provides:

"Notwithstanding Missouri Supreme Court Rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Rule 23.05 provides:

"All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts."

Under both the statute and the Rule, joinder is proper where the offenses: 1) are of the "same or similar character"; 2) "are based on the same act or transaction"; or 3) "are based on two or more transactions connected together or constituting parts of a common scheme or plan". Liberal joinder of offenses is favored to achieve judicial economy, and the trial court's decision should be based solely on the State's evidence. *Sims,* 764 S.W.2d at 696.

■■■■ The State argues that the offenses here are sufficiently similar to permit joinder. Defendant argues that the crimes are dissimilar, and we should assess dissimilarity by applying the evidentiary rules governing the admission of evidence of similar crimes. Defendant's arguments are both unfounded. The evidentiary rule and the law of joinder present different questions making the importation of the evidentiary rule into the law of joinder inappropriate. *State v. McCrary,* 621 S.W.2d 266, 271 n. 7 (Mo.banc 1981). The

evidentiary rule questions whether evidence is admissible to prove the crime charged. *Id.* The law of joinder deals with the question of what crimes can be charged in one proceeding. *Id.* The prejudicial impact from evidence of related offenses is considered when the court determines whether a severance is appropriate. *Id.* Whether the joinder of offenses is unduly prejudicial to a criminal defendant is a separate issue from the question of whether the offenses have been properly joined. *Id.*

■■■ As to the similarity of the offenses, similar tactics are sufficient to constitute acts of the same or similar character. *State v. Hughes,* 787 S.W.2d 802, 804 (Mo.App.1990). Tactics which resemble or correspond in nature are sufficient, but identical tactics are not required. *Id.*

Defendant argues that the first act, the robbery of the Hearst home, is not similar to the other acts. We note three differences between the first act and the other three, but they are not sufficient to defeat joinder. First, the Hearst residence is in west St. Louis County, but the other robberies took place in south St. Louis County. Second, Tony Sillman accompanied defendant and Pilkerton to the Hearst home, but not to the other robberies. In *Lytle v. State,* 762 S.W.2d 830, 836 (Mo.App.1988), two acts of selling narcotics were properly joined even though the defendant acted alone the first time, and with an accomplice the second time. The court was not persuaded by the defendant's additional argument that the two acts occurred in different locations. *Id.* Section 545.140.2 does not require that offenses be identical in every detail in order to be joined in the same information. *State v. Johnson,* 753 S.W.2d 576, 583 (Mo.App.1988). These first two differences are overcome by the strength of the other similarities.

The third difference between the Hearst robbery and the other three is difference between a home and a commercial establishment. In *Johnson,* the court held that the burglary of a jewelry store was properly joined with the burglaries of two homes.

753 S.W.2d at 582–83. The court noted that both the crimes and the manner in which they were committed were the same. *Id.* In this case, all of the charges relate to robbery and armed criminal action, and all were committed in the same manner.

Other states have found that the joinder of residential and commercial robberies was proper and that the denial of severance did not prejudice the defendants. In *Evans v. State*, 188 Ga.App. 379, 373 S.E.2d 70, 71 (1988), the defendant robbed two convenience stores and a residence in a four day period. The defendant's arrest for the third crime led to his identification as the perpetrator of the other two offenses. The court found that all three robberies were related in time, manner, general location, and circumstance of arrest. In *People v. Stewart*, 105 A.D.2d 858, 482 N.Y.S.2d 51 (1984), the robbery of a residence and the robbery of a cab driver one week later were joined under a law permitting joinder of charges defined by the same statutory provision. The court found that there was no prejudice from the denial of severance. *Id.*

Here, the four criminal acts are similar. Defendant and Pilkerton always acted together, though sometimes with other persons. Defendant always remained in the car, a red 1963 Chrysler, while Pilkerton displayed the gun and demanded the money. In the first two robberies, Pilkerton told his victims not to "highball" him. All the crimes occurred in St. Louis County within a three-week period.

■ Accordingly, we find that joinder of the offenses at trial was proper. We must now address the question of whether the denial of severance was proper.

■ A motion to sever offenses is governed by § 545.885, which provides:

"1. Notwithstanding Missouri supreme court rule 24.07, whenever two or more offenses are jointly charged in an indictment or information, the court shall order both or all offenses to be tried together.

2. If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, 'substantial prejudice' shall mean a bias or discrimination against the defendant or the state which is actually existing or real, and not one which is merely imaginary, illusionary or nominal."

*See also* Rule 24.07. There must be both an abuse of discretion and a clear showing of prejudice before a denial of severance can be reversed. *Hughes*, 787 S.W.2d at 804.

■ In determining whether actual prejudice exists, the court should consider, among other factors, the complexity of the evidence to be offered and whether the trier of fact can realistically distinguish the evidence and apply the law intelligently to each offense. *Sims*, 764 S.W.2d at 697. In this case, the evidence was provided by the victims and the investigating officers. The officers testified about statements defendant made confessing to the crimes. In addition, a tape containing defendant's confession to his part in the Hearst robbery was played to the jury. Defendant did not present any evidence. The evidence relevant to each element was distinct and not complex.

■ Defendant claims that a note that the jury sent to the judge during deliberations shows actual prejudice in failing to sever the offenses. The note stated:

"Hurst [sic] case: if it was planned to perform burglery, [sic] and at the last moment, Ken Pilkerton turned it into a robbery, is Mike responsible for this change of plans—even if he wasn't involved in the decision to perform robbery?"

The court responded that the jurors were to be guided by the evidence and the instructions. Defendant's intent at the Hearst residence was a key issue in this case. The jurors' note shows that they were aware of the issue of defendant's responsibility for the first robbery. We

have no reason to believe that the jury could not distinguish the evidence and legal principles applicable to each offense. *State v. Morant,* 758 S.W.2d 110, 115 (Mo. App.1988).

Even if the cases were severed, the evidence of the three later robberies would have been admissible at a trial for the Hearst robbery. Evidence of other crimes is admissible to show intent, among other things. *Morant,* 758 S.W.2d at 116. Moreover, the evidence establishing defendant's participation in each of the four crimes is so intertwined that a complete picture of the investigation of any one of the offenses could not be presented without mention of the others.

Defendant has not demonstrated any actual prejudice from the trial court's denial of severance. Defendant has also failed to show that the trial court abused its discretion in denying the motion to sever. Defendant's second point is denied.

### III.

### PROBABLE CAUSE TO ARREST

Defendant's third point argues that the court erred in denying his motion to suppress statements taken after his arrest because he was arrested without probable cause. Specifically, defendant argues that the statement of Sabrina Groves, an accomplice in the second and third robberies, could not be used to supply the probable cause for his arrest. This argument is asserted for the first time on appeal. In the trial court, the sole basis for defendant's motion to suppress his post-arrest statements was that they were not voluntarily made due to his mental condition and symptoms of alcohol withdrawal. Similarly, in his motion for new trial, defendant's sole contention was that he could not understand and knowingly waive his rights because of his mental health. Defendant may not on appeal seek to reverse the ruling of the trial court on the admission of evidence upon grounds entirely different from his trial court objection. *State v. Jones,* 806 S.W.2d 702, 705 (Mo.App.1991); *State v. Cannady,* 660 S.W.2d 33, 37 (Mo. App.1983).

Despite the fact that the issue presented to us has not been preserved for appellate review, because defendant's contention invokes consideration of constitutional rights we choose to address the issue. In *State v. Corpier,* 793 S.W.2d 430 (Mo.App.1990), the defendant moved to suppress his confession contending it was tainted by his illegal arrest. At trial, his sole contention was that the arrest, effected inside a private residence without a warrant, violated his right to an expectation of privacy as protected by the fourth amendment. Despite the fact that the issue of probable cause for the arrest had not been presented to or considered by the trial court, the Supreme Court noted that the evidence "indicated sufficient probable cause existed for a warrantless public arrest." 793 S.W.2d at 436 n. 1. The only information concerning the defendant's complicity in the crime came to the police through the confession of his accomplice.

Accordingly, we find the naming of defendant as a participant in the series of robberies by his accomplice furnishes sufficient probable cause for his warrantless arrest. The mere fact that the accomplice was reluctant to identify her companions at first does not destroy her reliability or the right of the police to act upon the information she furnished.

### IV.

### RULE 29.15 MOTION

Defendant's final point on appeal relates to the denial of his Rule 29.15 motion. The motion court ruled the motion was not timely filed. Subsequent to this ruling the Supreme Court issued its opinion in *State v. White,* 798 S.W.2d 694 (Mo.banc 1990). The State concedes that under the rule set forth in *White,* the motion was timely filed. Accordingly, we are constrained to remand defendant's Rule 29.15 motion for further proceedings.

The judgment of conviction on each of the twelve counts is affirmed. The order denying defendant's Rule 29.15 motion is

reversed and this matter is remanded to the motion court for further proceedings.

SMITH, P.J., and SATZ, J., concur.