STATE of Missouri, Respondent,

v.

Donald HOWTON, Appellant.

Donald Gene HOWTON, Jr., Respondent,

v.

STATE of Missouri, Appellant.

Nos. WD 47276, WD 48707.

Missouri Court of Appeals, Western District.

Jan. 17, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Donald Gene Howton, Jr. appeals from his conviction of sodomy, § 566.060.3, RSMo Cum.Supp.1991, for which he was sentenced to five years' imprisonment. Mr. Howton raises two points on appeal, arguing (1) that the lower court abused its discretion in consolidating for trial Count I with Counts II and III,[1] because evidence from the sodomy in Count I would not have been admissible in a separate trial of the sodomy in Count II; and (2) that the trial court plainly erred in allowing a witness to testify as to statements made by the allegedly abused child without first holding a hearing to establish whether this testimony carried a sufficient indicia of reliability. Mr. Howton further appeals the denial of his Rule 29.15 post-conviction motion after an evidentiary hearing, but, because Mr. Howton does not address this mat-

---

1. Count I involved a charge of oral sodomy on December 12, 1991, of which Mr. Howton was acquitted; Count II entailed a charge of manual sodomy on February 8, 1992, for which Mr. Howton was convicted; and Count III encompassed a charge of second degree assault with a knife on February 8, 1992, of which Mr. Howton was acquitted.

ter in his points relied on, it is regarded as abandoned. *State v. Johnson*, 833 S.W.2d 49, 49 (Mo.App.1992). The conviction and denial of post-conviction relief are affirmed.

On June 12, 1992, Donald Gene Howton, Jr. was charged with one count of sodomy and one count of first-degree assault, § 565.050, RSMo 1986. The State was permitted to amend its information on July 27, 1992, to reduce the assault charge from first-degree to second-degree, § 565.060, RSMo 1986.[2] Later, the State attempted to file a third amended information, to add a second count of sodomy against Mr. Howton, but the Circuit Court of Boone County refused to grant any further amendments. The State then filed a separate information alleging the additional count of sodomy. The court allowed both informations to be combined for trial, which commenced on October 21, 1992.

"In reviewing the record on a criminal appeal, this court accepts as true all evidence tending to prove the defendant's guilt together with all reasonable inferences to be drawn therefrom, disregarding all evidence and inferences to the contrary." *State v. Anderson*, 785 S.W.2d 299, 300 (Mo.App. 1990). The evidence, viewed in that light, indicates that Mr. Howton is married to Elizabeth "Betty Jo" Howton, and the couple has two daughters, B.R.H. and A.H.[3] On December 12, 1991, the girls were, respectively, three years old and four months old. Both Mr. and Mrs. Howton are hearing-impaired, and they communicate by means of sign language. B.R.H. is not deaf, but knows how to communicate through sign language.

Julie Reichert baby-sat for the family and, on the afternoon of December 12, 1991, arrived at the Howtons' residence to pick up the girls. She noticed that both B.R.H. and her father had wet hair. Ms. Reichert asked B.R.H. if she had taken a bath, and B.R.H. responded, "Yes, with my daddy."

Later that evening, as Ms. Reichert was preparing dinner, B.R.H. came out of the rest room and stated that her bottom hurt. Ms. Reichert inquired as to why, and B.R.H.

said, "Because my daddy pushed and pushed too hard." B.R.H. then explained that her father had pushed with his tongue and with his bottom.

After dinner, B.R.H. was playing on the floor, when she put her feet in the air and placed her hands between her legs. Ms. Reichert asked whether that was where her father had hurt her, and B.R.H. said, "Yes, open and on the inside too."

That same evening, B.R.H. played with some dolls in Ms. Reichert's home. She laid them around Ms. Reichert's ottoman, covered them, and announced that they were all sick because their daddies had hurt their bottoms too.

During the course of the evening, Ms. Reichert twice asked B.R.H. whether her father had hurt her before, to which B.R.H. responded, "Yes, but it hurts again." B.R.H. also indicated that her father had done this "lots of times," but that she had not informed her mother of the incidents.

When Mrs. Howton arrived to pick up the girls, Ms. Reichert instructed B.R.H. to report to her mother what had been happening. In sign language, B.R.H. communicated something to her mother. B.R.H. told Ms. Reichert that she had informed her mother that her father had "hurt [her] bottom."

Approximately two months later, on February 8, 1992, Mr. Howton came home from work around noon. Mrs. Howton left B.R.H. and A.H. with him while she ran some errands. When Mrs. Howton returned, Mr. Howton was watching television with A.H. on his lap.

Mrs. Howton began preparing a bath for A.H. While she was in the lavatory, B.R.H. entered the room and pulled down her panties to use the toilet. Mrs. Howton noticed that B.R.H. was wearing a blood-stained sanitary pad, which Mrs. Howton removed and threw in the trash. Mrs. Howton asked B.R.H. whether her father had injured her, but B.R.H. would not respond at first. Mrs. Howton then took her outside to a telephone

---

**2.** Section 565.060 was amended in 1993, subsequent to the date of the events upon which Mr. Howton was charged with assault.

**3.** The couple also has a son who lives in Illinois with Mr. Howton's mother.

booth, and, upon further prodding, B.R.H. replied, "Hurt something. Hurt big finger."

Mrs. Howton returned to her husband and stated, "There is blood on the toilet stop. I wanted to show you about it. You had intercourse with [B.R.H.]." Mr. and Mrs. Howton began arguing, and Mr. Howton made his wife leave the house.

At approximately 4:30 p.m., Eva Dean White, Mrs. Howton's mother, arrived at the Howtons' house with her sister, Elaine Wills. B.R.H. was crying. All she would tell Mrs. White is that her mommy had left after fighting with her daddy.

Mrs. White asked Mr. Howton what had happened. He stated that Mrs. Howton had accused him of sexual abuse, and that he had made her leave the house. Mrs. White and her sister then drove around searching for Mrs. Howton, but they were unsuccessful in locating her. Upon returning to the Howtons' residence, Mrs. White agreed to wait with B.R.H. and A.H. while Mr. Howton searched for his wife.

While Mr. Howton was gone, B.R.H. told her grandmother that her "daddy hurt [her] bottom," and pointed between her legs. Mrs. White took B.R.H. into the bathroom and pulled her pants down, noticing blood on them. B.R.H. said that her father had hurt her "when he put [cold] medicine on [her]." Mrs. White searched for medicine in the refrigerator but did not discover any.

In the meantime, Mrs. Howton had walked to the Centralia Police Station. The dispatcher, Betty Self, called Officer Bryan D. Lane to the station to respond to Mrs. Howton's emergency situation. Mrs. Howton communicated with Officer Lane and Ms. Self through written notes. Upon ascertaining her circumstances, Officer Lane summoned Police Chief Gerald Goins and notified the Department of Family Services that a potentially abusive situation existed.

As Officer Lane and another officer, Les Warner, were about to collect B.R.H. and A.H., Mr. Howton arrived at the Station. He and Mrs. Howton appeared to argue in sign language, so the police separated them. Ap-

proximately ten to fifteen minutes later, Police Chief Goins arrived with Steve Rhinehart, a neighbor of his; Police Chief Goins hoped that Mr. Rhinehart could interpret the sign language, since he had a deaf daughter. Police Chief Goins, Officer Lane and Mrs. Howton then went to the Howtons' residence, leaving Officer Warner at the Station with Mr. Howton.

When they arrived at the Howtons' home, the police found B.R.H. lying on her bed, wearing no clothes from the waist down. The police also discovered, in the bathroom wastebasket, a female hygiene pad with red spots on it and some wadded up toilet tissue covered with a jellied substance. On top of the toilet, the officers found a jar of Vaseline. The police then called an ambulance for B.R.H., and she was taken to the University Hospital emergency room. B.R.H. told the ambulance worker, Kevin Thompson, "My daddy hurt my bottom. I didn't do anything wrong. He hurt my bottom."

At the hospital, Dr. David Ege greeted B.R.H. and asked her if she had an "ouee." B.R.H. answered affirmatively and said that her father had hurt her bottom with a knife and that it bled.[4] Dr. Ege and Dr. Nancy Vander Sluis then conducted a basic physical examination on B.R.H., to which she was very cooperative. B.R.H. was also initially cooperative to their genital examination but, once they began pulling on the damaged internal structures, B.R.H. became very uncomfortable and, even after receiving sedatives, made it difficult for the doctors to proceed.

After restraining B.R.H., the doctors found a number of genital abnormalities. B.R.H.'s clitoris was enlarged, and there were two extremely red spots on either side of her labia minora. Two flaps of skin, appearing to be the remnants of B.R.H.'s hymen, were cut down the middle. Just below B.R.H.'s vaginal area, in the posterior fourchette, there appeared a V-shaped area of redness which looked as if it had been traumatized. Dr. Vander Sluis stated that she believed that B.R.H.'s external injuries did not occur from

---

4. Kathy Simons from the Division of Family Services was also present during this discourse, though she did not participate in the initial interview with B.R.H.

a sharp object, but from a blunt trauma or a very forceful rubbing motion; the hymenal injuries, on the other hand, required a penetrating trauma from either a blunt or sharp object. The doctor further stated that the injuries occurred within less than twenty-four hours and were inconsistent with something B.R.H. would have done to herself, since they appeared in multiple spots and would have been very painful to inflict.

In August of 1992, Dr. Colleen Kivlahan reexamined B.R.H., in order to provide a second opinion. Dr. Kivlahan found that B.R.H.'s hymenal opening was abnormally large. In her opinion, the opening had been severed by means of a blunt penetrating trauma. Dr. Kivlahan further testified that she did not believe B.R.H. could have accidentally caused this injury through a single thrust with one of her toys.

The jury returned a verdict finding Mr. Howton guilty of sodomy resulting from the manual penetration of his finger, but not of sodomy deriving from oral stimulation, nor of second-degree assault with a knife. Mr. Howton appeals his conviction of sodomy.

I.

■ In his first point on appeal, Mr. Howton argues that the trial court committed prejudicial error in consolidating for trial Count I, alleging oral sodomy, with Count II, manual sodomy, and Count III, assault in the second degree, since evidence pertaining to Count I would not have been admissible in a separate trial of Counts II and III. Mr. Howton claims that the consolidation abrogated his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, since the jury could use evidence of one count to infer his guilt of another count.

"A defendant in a criminal case does not have a federal or state constitutional right to be tried on only one offense at a time." *State v. Clark,* 729 S.W.2d 579, 581 (Mo.App. 1987). Courts should, in fact, liberally join criminal charges in order to promote judicial economy. *Id.* at 582. When ruling whether

joinder is appropriate, courts only consider the State's evidence. *Id.*

■ In Mr. Howton's case, two informations were adjudicated in the same trial. Counts II and III formed one of the informations, while Count I comprised the second. "[A] trial court may, in its discretion and despite the objection of the defendant, consolidate for trial several indictments or informations against the same accused." *Anderson,* 785 S.W.2d at 304. To determine whether such joinder is permissible, the court should engage in the same inquiry as it would in a challenge to the joinder of several counts into a single information. *Id.* at 305.

■ Rule 23.05 and § 545.140.2, RSMo 1986, govern joinder of offenses. *State v. Hughes,* 787 S.W.2d 802, 804 (Mo.App.1990). According to Rule 23.05 and § 545.140.2, RSMo 1986, two or more crimes may be charged in the same indictment or information if all offenses are "of the same or similar character." Comparable tactics, which resemble or correspond in nature, are sufficient to establish that offenses are of the same or similar character; the tactics need not be identical. *State v. Forister,* 823 S.W.2d 504, 509 (Mo.App.1992).

In both informations, Mr. Howton was charged with sexual misconduct against his daughter, B.R.H. Each information contained an allegation of sodomy, wherein Mr. Howton touched his daughter's vagina, either manually or orally. According to the charges, the crimes also occurred within an approximate two-month time span. Although these tactics may not be identical, they are sufficiently comparable to be of the same or similar character. Therefore, joinder was appropriate.

■ Upon a determination that offenses were properly joined, the reviewing court next determines whether the offenses should have been severed nonetheless, due to the circumstances of the case. *State v. Olds,* 831 S.W.2d 713, 719 (Mo.App.1992). "Joinder is either proper or improper under the law while severance is within the trial court's discretion." *State v. Sims,* 764 S.W.2d 692, 696 (Mo.App.1988). To secure a reversal despite proper joinder, the defendant must

establish that the trial court's denial of a severance constituted an abuse of discretion and that it manifested substantial prejudice.[5] *Hughes,* 787 S.W.2d at 804.

If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of the section, *"substantial prejudice"* shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

Section 545.885.2, RSMo Cum.Supp.1991. *See also* Rule 24.07. Mr. Howton claims that he suffered prejudice because the State used evidence in Count I to imply that he had a propensity to commit the sodomy charged in Count II.

"Severance of jointly charged offenses is not mandated merely because evidence relating to one count would not be admissible in the trial of a second count if the two were tried separately." *State v. Conley,* 873 S.W.2d 233, 238 (Mo. banc 1994). Such evidence is relevant in the determination of prejudice, however, when it is inadmissible propensity evidence. *Id.*

■ Without reaching the issue of whether the evidence from the sodomy in Count I would have been admissible in a separate trial for the sodomy in Count II, this court finds that substantial prejudice did not result. When joinder causes the jury to hear otherwise inadmissible propensity evidence, prejudice may still be overcome. *Id.* The court considers the number of offenses charged, the complexity of the evidence, and the realistic likelihood that the fact finder can distinguish the evidence, while thoughtfully applying the law to each offense. *Sims,* 764 S.W.2d at 697.

In the instant situation, Mr. Howton was charged with a total of only three offenses, and the evidence pertaining to the alleged crimes was not complex. *See Olds,* 831 S.W.2d 713 (holding that severance was not required when a defendant was charged with five counts of forcible rape, two counts of felonious restraint, three counts of kidnapping, two counts of armed criminal action, two counts of forcible sodomy, one count of second degree assault, one count of first degree robbery and one count of stealing). Other than testimony concerning physical evidence, the evidence in Mr. Howton's case consisted of statements made to others by his three-year-old daughter. These accounts were not so intricate as to confuse the fact finders. On the contrary, the jury was simply required to decide which portions of the statements, if any, it believed.

In addition to the simplicity of the evidence, courts also weigh the impact of jury instructions; clear instructions can help a jury competently distinguish between offenses. *See id.* at 719. At Mr. Howton's trial, the jury was specifically directed by MAI CR3d–304.12 to consider each count separately. The record suggests that the jurors indeed complied with this provision, since they convicted Mr. Howton of manual sodomy in Count II, while acquitting him of oral sodomy in Count I. The jury's verdict indicates its capacity to distinguish between the evidence and consider the offenses and the elements of each offense separately. *See Hughes,* 787 S.W.2d at 804. If the jury had been unable to distinguish between the evidence, it is unlikely that it would have returned such a verdict.

Mr. Howton has not carried the burden of establishing a particularized showing of substantial prejudice. Thus, the trial court did not abuse its discretion in refusing to sever the two informations charged against Mr. Howton. Point denied.

II.

■ In his second point, Mr. Howton charges that the trial court plainly erred in allowing Dawn Crocker to testify as to statements B.R.H. made, since the State failed to establish, in a hearing outside the presence of the jury, that Ms. Crocker's testimony carried sufficient indicia of reliability, as re-

5. Case law appears to intertwine the two requirements, however, suggesting that the trial court abuses its discretion only when prejudice ensues. *See Sims,* 764 S.W.2d at 697.

quired by § 491.075, RSMo Cum.Supp.1992.[6] Mr. Howton further claims that Ms. Crocker's testimony violated his rights to due process and to confront the witness against him, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

Ms. Crocker was B.R.H.'s teacher in the Boone County School District. During trial, she testified that a male college student was visiting B.R.H.'s class one day. As the pupils sat in a semi-circle, B.R.H. walked over to the college student, touched him and said, "My daddy hurt my bottom." B.R.H. then walked back to her place in the semi-circle and sat down. Mr. Howton claims that this testimony should not have been allowed without a § 491.075 hearing to determine its reliability.

Section 491.075 was enacted to provide an exception to the exclusionary rules of evidence. *State v. Mahany*, 748 S.W.2d 762, 765 (Mo.App.1988). It permits witnesses to testify as to statements made by children under the age of twelve, even when those statements constitute inadmissible hearsay. *Id.* Section 491.075 reads, in pertinent part:

> 1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
>
> > (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability;[7] and
> >
> > (2)(a) The child testifies at the proceedings....

▪ "Section 491.075 is implicated only when timely objections to the admissibility of such statements are made on proper legal grounds." *Mahany*, 748 S.W.2d at 765. A party's failure to timely object to hearsay evidence waives his or her right to dispute its admissibility on appeal. *State v. Martin*, 852 S.W.2d 844, 850 (Mo.App.1992). Mr. Howton admits that he did not object to the testimony of Ms. Crocker as being hearsay, though he did object on a separate basis.[8] At best, then, reversal is only proper if the reviewing court finds plain error under Rule 30.20. *State v. Langlois*, 785 S.W.2d 679, 681 (Mo. App.1990).

▪ Under the plain error standard, the appellate court will not set aside a lower court ruling unless the ruling affects the rights of the accused so much that manifest injustice or miscarriage of justice will occur without reversal. *Id.* at 851. The appellant carries the burden of proving manifest injustice or a miscarriage of justice. *Id.*

This court finds that Ms. Crocker's testimony does not constitute plain error. When the defendant does not object to the admission of hearsay evidence, its admission is not plain error. *State v. Harper*, 778 S.W.2d 836, 839 (Mo.App.1989). Nor does plain error arise when a court fails to hold a § 491.075 hearing to determine whether out-of-court statements are supported by sufficient indicia of reliability. *Id. See also State v. Langlois*, 785 S.W.2d at 681; *State v. Fogle*, 743 S.W.2d 468, 470 (Mo.App.1987). Mr. Howton's claim, therefore, is without merit. Because the defendant's argument has been specifically rejected by the courts of Missouri, there is no showing of manifest injustice or a miscarriage of justice. Point denied.

The conviction and the denial of post-conviction relief are affirmed.

All concur.

---

6. All references to § 491.075 derive from RSMo Cum.Supp.1992.

7. Hearings are necessary under § 491.075 to show that otherwise inadmissible testimony will have a "particularized guarantee of trustworthiness." *State v. Naucke*, 829 S.W.2d 445, 457 (Mo. banc 1992), *cert. denied*, — U.S. —, 113 S.Ct. 427, 121 L.Ed.2d 348 (1992).

8. Mr. Howton's attorney objected to Ms. Crocker's testimony on the grounds that she was not a previously disclosed witness, and that her testimony would be duplicative and bolstering. The objection was overruled. Mr. Howton does not allege error on these grounds on appeal.