**STATE of Missouri, Respondent,**

v.

**Willie ROBINSON, Appellant.**

**Willie ROBINSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 60319, 61810.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 23, 1993.

John Munson Morris, III, Hugh Marshall, Jefferson City, for respondent.

Marilynn Rydlund, Emily Blood, St. Louis, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Appellant, Willie Robinson, was originally indicted on five charges: four counts of second degree burglary, § 569.170 RSMo 1986, and one count of possession with intent to use drug paraphernalia, § 195.233 RSMo 1986. He was found guilty by a jury of two of the four burglary charges and was acquitted on the other two burglary charges and the drug paraphernalia charge. He was sentenced by the court as a prior, persistent, and class X offender to a total term of twenty years imprisonment.

The evidence, viewed in a light most favorable to the verdict, reveals the following: On December 6, 1989, Steven Call came back to his apartment on 6650 Oakland, to have lunch with his wife, Teresa Sweeney. Upon arriving, he noticed an unfamiliar man standing in front of a white Buick automobile. Sometime later as he and his wife were leaving, he saw this man again, coming around the corner of the apartment building with a package. He

pointed him out to his wife. They saw him place the package into his car. They returned home later that evening to find that one of the apartments in the building had been burglarized.

On January 16, 1990, Teresa Sweeney came home to her apartment at approximately 3:20 p.m. As she ascended the stairs, she saw the appellant standing on the third floor landing. Because she did not recognize him as a resident of the building, she grew suspicious. She looked at him, exchanged greetings, and entered her apartment and immediately bolted the door. She then descended the back stairwell to see if the same white car she had seen on December 6, 1989, was parked outside. She saw what she believed to be the same white car, parked immediately in front of the building. She wrote down the license plate number and went back to her apartment to call the police.

The police responded to her call and arrived shortly thereafter. Officers Vila and Bequette met Sweeney in front of the apartment building. When they arrived, she related her suspicions to them. As she proceeded to show them the similar white car that was parked outside, she noticed the appellant walking near the apartment building carrying a bag in his hand. She pointed him out to the officers, who told him to stop. He turned and looked at them, but dropped his bag and ran. The officers chased him and eventually found him hiding underneath a van in a nearby driveway. Upon finding him, they ordered him to come out. When he did, they attempted to arrest him. However, he ran away.

The appellant was apprehended approximately a half hour later by three other officers who had received his description from Officer Vila. He was placed in custody and brought back immediately to the witnesses. Upon seeing him again, Officer Vila, Officer Bequette, and Teresa Sweeney each identified him. He was found with a watch, a set of keys, and one hundred thirty-four dollars arranged in a specific sequence. Missing items from the apartments, including a tea set and silver service, were recovered inside the bag he had dropped. Police later investigated the

white Buick automobile, and found it was registered to the appellant. Inside the car they recovered two syringes, a scorched bottle cap, and traces of heroin and cocaine inside the bottle cap.

At trial, the State offered the testimony of Steven Call, Teresa Sweeney, and Officers Vila and Bequette, in addition to the testimony of the burglary victims and the officers that had placed the defendant under arrest. Upon the evidence received, the jury found the appellant guilty of the January 16 burglaries, and the court imposed sentence.

On appeal, appellant claims that the trial court erred in: 1) overruling his motion to suppress the identifications and his objections to the in-court identifications; 2) overruling his objection to the state's characterization of him in closing argument as a drug addict; 3) submitting a reasonable doubt instruction which equated "proof beyond a reasonable doubt" with being "firmly convinced"; and 4) overruling his motion to dismiss, or in the alternative, to stay the proceedings for failing to comply with declared policies in selecting petit and grand juries. We affirm.

At the outset, we note that the appellant has failed to preserve his appeal for post-conviction relief pursuant to Rule 29.15, because he has not raised a point of error. Therefore, we consider his appeal to have been abandoned. *State v. Gaines*, 807 S.W.2d 678 (Mo.App.1991).

■ Appellant's first point challenges the identifications that were made of him by the State's principal witnesses at trial. Specifically, he contends that the out-of-court identifications by Teresa Sweeney, Officer Vila, and Officer Bequette were suggestive and unreliable, and that the in-court identifications were therefore similarly tainted, and thus violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution. The State contends that he failed to preserve this issue for appeal because he did not object at trial.

Although appellant had filed a pretrial motion to suppress the identifications, it

was denied. He did not object again when he was positively identified by the State's witnesses at trial. When a motion to suppress evidence is denied and the evidence is subsequently offered at trial, an objection must be made at trial to the admission of the evidence. Absent an objection, the issue of whether the evidence should be excluded is not preserved for review. *State v. Sandusky*, 761 S.W.2d 710 (Mo.App. 1988).

Since appellant did not renew his objection at trial, he failed to preserve his point. Our review, therefore, is limited to plain error, and we look only to see whether the admission of the identifications resulted in manifest injustice or a miscarriage of justice. Rule 30.20.

■ The law regarding the admission of pretrial and in-court identification testimony is guided by standards set forth in *State v. Higgins*, 592 S.W.2d 151, 158–160 (Mo. banc 1979). Where pretrial identifications have been made, this court will first look to see whether the procedures employed during those identifications were impermissibly suggestive. *Id.* at 159. If they were, then we will consider whether those suggestive pretrial procedures affected the reliability of the identifications that were made at trial. Reliability, not suggestiveness, determines the admissibility of identification testimony. *Id.* at 160.

■ We find nothing suggestive about the procedures that were employed in this case. Police here used a "show-up" procedure, where they brought the appellant back to the witnesses for identification as soon as he was apprehended. Courts have long held this to be a proper procedure for identification, as long as police do not intimate or otherwise unduly pressure the witnesses to make a positive identification. *State v. Ballard*, 657 S.W.2d 302, 308 (Mo. App.1983). In *Ballard*, we held the procedure to be proper even where the appellant was handcuffed and surrounded by policemen at a show-up conducted within an hour of the robbery. *Ballard*, 657 S.W.2d at 308.

Here, appellant was returned to the scene of the crime within a half hour after the police observed him fleeing from the apartment building. Once he was apprehended, he was brought back immediately for identification. He was in handcuffs and seated in a patrol wagon at the time he was identified. There is no indication that suggestive procedures were employed. Police did not intimate to the witnesses that he was the right suspect, or pressure them to positively identify him. They merely asked them to take a look at him and the decision was left to them. Thus, we conclude that the procedures used here were not impermissibly suggestive.

■ Even if we were to assume, arguendo, that the procedures employed were impermissibly suggestive, we would not, for that reason alone, suppress the identifications. Pretrial identifications that were found suggestive have been held to be admissible as long as they were reliable. *State v. Williams*, 674 S.W.2d 46, 48 (Mo. App.1984). Reliability involves a number of factors, including: the opportunity of the witness to view the actor at the time of the crime; the degree of attention exercised; the accuracy of a prior description; the level of certainty demonstrated by the witness; and, the length of time between the crime and the confrontation when identification occurs. *State v. Harding*, 734 S.W.2d 871 (Mo.App.1987).

Here, the three witnesses (Teresa Sweeney, Officer Vila, and Officer Bequette) each had ample opportunity to view the appellant and to accurately remember his appearance. Teresa Sweeney testified that she saw the appellant face-to-face in a lighted hallway as she passed him on the stairway. They exchanged greetings as she continued to her apartment. She said she paid close attention to him at the time, because he was unfamiliar. She saw him again when he was walking near the apartment building, and prior to that, she was able to give the police a description of him.

Officer Vila saw the appellant running from the scene of the crime with a bag in his hand. He testified that he was no more than fifty yards away from him, and that he could clearly see that he was a black man wearing a gray jacket, blue shirt, jeans, white tennis shoes, and a blue cap.

When he saw him again underneath the van, he paid very close attention to him. He was able to notice at that time that the jacket and cap were gone. He also recalled seeing the appellant's face very clearly before he ran away. Officer Bequette had similar opportunities to view the appellant. He also saw the appellant walking on the sidewalk near the apartment buildings, and saw him when he came out from underneath the van.

■ The time and opportunity that each of the witnesses had allowed them to make reliable pretrial identifications. When the appellant was brought back within a half hour, they each immediately identified him, based on their earlier observations. The reliability of their pretrial identifications also ensured the same for their in-court identifications.

Each of the witnesses expressed the same certainty in-court. Not only were the witnesses able to point him out on direct examination, but they were subjected to extensive cross-examination. In reviewing the testimony of these three witnesses, we find their identifications to have been reliable, and find no error, plain or otherwise, on the part of the trial court.

Appellant's second contention centers on the prosecutor's closing argument. He alleges that the trial court erred in allowing the prosecutor to characterize him as a drug addict during closing argument, and that such error was prejudicial to him and violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution.

During closing argument, the prosecutor referred to the appellant as a drug addict four times. In each instance, he exposed the appellant's motivation for the burglaries. Defense counsel objected after the first reference, but the trial court overruled, commenting that it was closing argument. Appellant charges that the statements were improper and unsupported by the evidence. He asks us to find an abuse of discretion on the part of the trial court below.

A trial court has broad discretion to control oral argument, with wide latitude to accord counsel in their summaries. *State v. Pena,* 784 S.W.2d 883, 887 (Mo.App. 1990). Unless a trial court abuses its discretion to the prejudice of the defendant, its ruling will not be disturbed. *State v. Fuhr,* 660 S.W.2d 443, 448 (Mo.App.1983).

■ An abuse of discretion can occur where the trial court allows an attorney to argue matters not in evidence, or to otherwise misstate or pervert the evidence. *Id.* However, a trial court may allow an attorney to draw non-evidentiary conclusions as long as those conclusions can be fairly justified as inferences from the evidence. *Id.*

■ Here, there was evidence of drug usage found on him and in his car. Appellant had numerous tracks on his arms, evidencing prior and consistent drug usage. Two syringes and a scorched bottle cap containing cocaine and heroin residue were recovered from his car. An expert witness for the state testified that these were instruments commonly utilized by drug users to inject heroin or cocaine. From this evidence, the prosecutor could reasonably argue that the appellant was a drug addict. We find no error.

■ Appellant next alleges error with respect to the reasonable doubt instruction that was submitted by the trial court. That instruction was patterned after MAI–CR 3d 302.04. Based on the holding in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) he claims that MAI–CR 3d 302.04 impermissibly lowered the standard of proof needed for the jury to convict him.

Our Supreme Court has held that the term "firmly convinced" is intended to assist lay jurors in their understanding of the legal phrase "beyond a reasonable doubt." "Firmly convinced" and "beyond a reasonable doubt" are essentially synonymous. *State v. Antwine,* 743 S.W.2d 51, 62–63[12] (Mo. banc.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). This holding has not changed. *State v. Griffin,* 818 S.W.2d 278, 282[7] (Mo. banc.1991). Point denied.

■ Appellant's last point challenges the procedures that were used to select the grand and petit juries. He contends that

the grand and petit jury selection process substantially failed to comply with the declared policies of §§ 494.400 and 494.505, RSMo Cum.Supp.1992, and as such, denied him a jury reflecting a fair cross-section of the city.

Appellant was tried on a substitute information issued January 28, 1991, in lieu of the March 15, 1990 grand jury indictment. No challenge has been made to the substitute information. Therefore, any error in the earlier grand jury indictment is moot. *State v. McDowell*, 832 S.W.2d 333, 335 (Mo.App.1992).

Appellant also claims that problems with the petit jury selection system caused underrepresentation of certain groups in the jury pool. These problems were addressed by the Honorable Ronald M. Belt, when he held a hearing on October 10 and 13, 1990 in the consolidated cases styled *State v. Kevin Bromwell*, Cir.Ct. No. 881–1619, and *State v. Timothy Johnston*, Cir.Ct. No. 891–1864.

In that hearing, Judge Belt found no over or underrepresentation of racial, gender, or age groups, but he did find the procedures used in granting juror continuances resulted in non-random selection of some juror panels. Thus, on October 16, he sustained an order to stay all jury trials in the City of St. Louis until the problems could be corrected.

That same day, the Board of Jury Commissioners issued an administrative order signed by Honorable James J. Gallagher, to conform the petit jury procedures with the statutory directives in order to allow for random selection.

Defendant's trial began on April 9, 1991. He has offered no evidence to show that the new procedures for petit jury selection were not in effect or were otherwise inadequate on this date. As such, defendant's final point fails.

Judgment affirmed.

CRANE and CRAHAN, JJ., concur.