Philip M. Hess, Judge
Introduction
James Scott was found guilty by a City of St. Louis jury of three counts of first-degree robbery and armed criminal action, and one count of second-degree attempted robbery arising out of three separate criminal incidents involving five victims committed within a three-week time period. Scott appeals, asserting the trial court erred by: (1) denying his motion to sever because the offenses charged were not of the same or similar character and were not based on the same act or transaction; (2) overruling his request to impeach one of the victim's credibility with an alleged prior inconsistent statement contained in a police report; and (3) overruling his motions to suppress and objections to his identifications as the robber because the lineups were unduly suggestive. We affirm.
Factual and Procedural Background
On December 28, 2013, A.F. ("Victim #1") and his girlfriend, E.M. ("Victim #2"), were walking home in the Central West End neighborhood of St. Louis (the "CWE") around 11:00 or 11:30 p.m. when they passed two men on the opposite side of the street. Victims #1 and #2 continued to walk about a half a block when a man behind them told them to stop. Victim #1 turned around and a man approached him with a gun and told Victims #1 and #2 he wanted their money and whatever else they had. The man went through Victim #1's pockets and took $40 from him. Meanwhile, another broad, African-American man wearing a flannel coat and stocking cap with braided hair came up behind Victim #2 and told her not to turn around. He asked her if she had anything in her *356 pockets. She told him she had nothing and offered him her cigarettes and debit card. The man declined, went through her pockets, and found nothing. The men told Victim #1 and #2 to start walking and to not look back. The men then ran away, and Victim #1 heard a car start but neither he nor Victim #2 saw the vehicle. Victims #1 and 2 reported the crimes to the police ("Incident #1").
Two days later, on December 30, 2013, just before midnight, T.S. ("Victim #3") and his wife, D.W. ("Victim #4"), pulled into a hotel parking lot at the intersection of Grand Avenue and Broadway in St. Louis to get a room for the night. They parked next to a blue SUV and Victim #3 went inside to pay for the room. While inside he saw a large African-American man with braided hair, wearing a flannel coat, exit the hotel. That man then got into the blue SUV.
After paying for a room, Victim #3 returned to the passenger seat of his car and the man from inside the hotel ran up to the front driver's seat with a gun, opened the door, and pulled Victim #4 out of the car. The man told Victim #4 to give him everything, to shut up, and that he would kill her. Meanwhile, another man with a gun ran up to the front passenger seat and told Victim #3 to get out and face the car. The man held a gun to Victim #3's head, repeatedly poked him in the head with it, and told him multiple times he would kill him. Victim #3 told him he did not have to kill him and he could have whatever he wanted. Victim #4 spoke and the man holding her at gunpoint told her to shut up or he would blow her away. The men went through Victim #3 and Victim #4's pockets and took Victim #3's jewelry, phone, and a CD case, and Victim #4's credit cards and a $500 money order. After the men took their belongings they put Victims #3 and #4 in the backseat of the car, told them to keep their hands up, closed the doors, and then got into the blue SUV and drove away. Victims #3 and #4 reported the crimes to the police and the police found and chased the SUV that night but the men got away ("Incident #2").
Nineteen days later, on January 18, 2014, K.T. ("Victim #5") was going to a friend's apartment for a party in the CWE. Victim #5 arrived shortly before 7 p.m. and parked her car up the street from her friend's apartment. She noticed people on the sidewalk by her car. All but one man walked away from the direction she planned to walk. That man came back in the same direction she was walking, crossed the street, and followed her. As she approached her friend's apartment the man asked her what time it was. Victim #5 continued to walk but turned her head slightly and said it's about 7:00 p.m. The man then asked her if she had a light and without turning around she said no. The man then put his hand on her left shoulder and held a gun to the right side of her body. The man told her to be quiet and he walked her over to her friend's apartment building. The man faced her against the building and asked her for her money. Victim #5 gave him her cash but the man indicated he was not happy with the amount. The man then turned her around and walked her back the way they came with his hand on her shoulder and the gun at her side. As they walked, Victim #5 repeatedly asked the man to let her go and he told her to be quiet. As they approached the next cross street the man turned Victim #5 towards a blue SUV and opened the passenger door. Victim #5 thought the man would put her in the SUV so she pulled back. When she did, the man stepped back from her and told her that if she gave him her purse she could leave. Victim #5 did not have a purse but she offered him her tote bag filled with food *357 and craft supplies she had for the party. The man refused and told her to run. Victim #5 ran to her friend's apartment and reported the crime to the police ("Incident #3").
Within two days, the police identified a vehicle captured on video surveillance in the CWE matching the description of the vehicle given by Victims #3, #4, and #5. Further investigation revealed the vehicle's license plate number was registered to an address in O'Fallon, Missouri.
On January 20, 2014, the police went to the address in O'Fallon, Missouri and learned that the vehicle belonged to Michele Scott, Scott's wife. Scott's wife told the police that her husband had been driving her vehicle the past few weeks and told the police where the vehicle might be located. The vehicle-a blue 1994 Chevy Suburban with a tan interior (the "Suburban")-was found and taken into police custody. Scott's wife gave the police consent to search the Suburban. Inside the police found a CD case. A warrant was placed for Scott's arrest and it was determined Scott was at his mother's home. The police went to Scott's mother's home and he was arrested. Scott's mother gave the police permission to search her home and inside the police found a flannel coat on the living room floor.
The police contacted Victims #3, #4, and #5 and asked them to come to the police station to see if they could identify the Suburban as the vehicle used in the crimes perpetrated against them. Victims #3, #4, and #5 all identified the Suburban. Victim #3 also identified the CD case found in the Suburban as the CD case stolen from him on December 30, 2013. The police then asked Victims #3 and #4 to view a photographic lineup containing six men. Victims #3 and #4 both identified Scott as the man who robbed them on December 30, 2013. The police then showed Victims #3 and #4 a live lineup containing four men. Victims #3 and #4 again identified Scott as the man who robbed them on December 30, 2013.
Victim #5 was also asked to view the live lineup. Upon her first viewing, Victim #5 identified no one but she was unsure about one person so she asked to view the lineup again. During the second viewing, she identified Scott as the man who robbed her on January 18, 2014.
The police called Victims #1 and #2 to see if they could come to the station and view the lineup, but they were at work and unable to leave so the police emailed them a photograph lineup containing the four men from the live lineup and asked them if they recognized anyone. Victims #1 and #2 both identified Scott as the man who robbed them on December 28, 2013.
On March 17, 2014, a grand jury indicted Scott on eighteen counts related to five criminal incidents occurring between December 17, 2013, and January 18, 2014. On September 26, 2014, an information in lieu of an indictment was filed charging Scott with the same eighteen counts filed in the indictment. On August 17, 2016, Scott filed a motion to suppress identification arguing that any out-of-court identification of him was inherently suggestive and conducive to mistaken identification, and a motion for severance of offenses, arguing that the offenses were improperly joined and that Scott would suffer prejudice if the offenses were not severed. On September 26, 2016, the State filed a memorandum of nolle prosequi as to six counts unrelated to Incidents #1, #2, and #3. That same day a seconded amended information in lieu of an indictment was filed charging Scott with twelve counts. Specifically, the State charged Scott with one count of first-degree robbery, one count of attempted first-degree robbery, and two counts of armed criminal action for the crimes that occurred *358 against Victims #1 and #2 on December 28, 2013; two counts of first-degree robbery and two counts of armed criminal action for the crimes against Victims #3 and #4 on December 30, 2014; and one count of first-degree robbery, one count of kidnapping, and two counts of armed criminal action for the crimes against Victim #5 on January 18, 2014.
At trial, the jury heard testimony from six police officers and the executive director of the CWE Neighborhood Security Initiative detailing the investigation that lead to Scott's arrest and the relevant charges. Scott's wife also testified Scott had driven the Suburban from December 28, 2013, to January 18, 2014, and that she gave the police permission to search the Suburban. Victims #1, #2, #3, #4, and #5 (collectively the "Victims") testified regarding their participation in the investigation. Victim #1 and #2 identified Scott as the man who robbed them on December 28, 2014. Victim #1 identified the flannel coat found at Scott's mom's house as the coat Scott was wearing when he robbed him. Victim #3 and #4 identified Scott as the man who robbed them on December 30, 2014. Victim #3 and #4 identified the Suburban as the vehicle used during the robbery. Victim #3 and #4 identified the flannel coat as the coat Scott was wearing during the robbery. Victim #3 and #4 identified the CD case as the one taken from them. Victim #5 identified the Suburban as the vehicle used in the crimes against her on January 18, 2014.
The jury found Scott not guilty of first-degree robbery, attempted first-degree robbery, and two counts of armed criminal action for the crimes charged related to Incident #1, but found Scott guilty of the lesser-included offense of one count of an attempt to commit second-degree robbery. For the crimes charged associated with Incident #2, the jury found Scott guilty of two counts of first-degree robbery and two counts of armed criminal action. For the crimes charged corresponding to Incident #3, the jury found Scott guilty of one count of first-degree robbery and one count of armed criminal action, but not guilty of one count of kidnapping and armed criminal action. Scott filed a motion for acquittal notwithstanding the verdict, or in the alternative, a motion for a new trial. That motion was denied. The court sentenced Scott, a prior offender, to seven years' imprisonment for attempt to commit second-degree robbery and to life imprisonment on all other counts, resulting in three consecutive life sentences. This appeal follows.
Standard of Review
On direct appeal, we review for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. State v. Morrow , 968 S.W.2d 100, 106 (Mo. banc 1998). We review the facts in the light most favorable to the verdict. Id. Issues not properly preserved for appeal may be considered only if we find that manifest injustice or a miscarriage of justice has resulted therefrom. Id.
Discussion
I. Joinder and Severance
In point I, Scott contends the trial court erred in denying his motion to sever the counts for the crimes charged on December 28th, December 30th, and January 18th because the offenses were not of the same or similar character and were not a part of a common scheme or plan. In support, Scott points out these differences between the crimes: 1) the crimes on December 28th and 30th involved two robbers and two victims while the crimes on January 18th involved only one robber and one victim; 2) the robbery on January 18th *359 involved an alleged kidnapping while the other robberies did not; 3) the December 28th and January 18th crimes occurred in the CWE but the December 30th crime occurred at Broadway and Grand Avenue outside of the CWE; and 4) the crime on January 18th was nearly three weeks apart from the crimes on December 28th and December 30th.
The State contends there was no trial court error because the three robberies were of the same or similar character and Scott failed to show he was substantially prejudiced as a result of the charges being tried together. In support, the State relies on these similarities: 1) all three charged incidents involved a robbery at night in which the Victims were in transit in public areas, were threatened with a gun, and ordered to hand over their valuables; 2) the first two robberies were two days apart and Scott was wearing the same flannel coat; 3) Scott used the same vehicle in the second and third incidents; 4) the first and third incidents occurred in the CWE; and 5) all three robberies occurred within three weeks.
Claims of improper joinder and failure to sever charges involve a two-step analysis. State v. Love , 293 S.W.3d 471, 475 (Mo. App. E.D. 2009). First, we must determine whether joinder of the charges was proper as a matter of law. Id. The propriety of joinder is a question of law. State v. Roberts , 465 S.W.3d 899, 903 (Mo. banc 2015). " 'Liberal joinder of criminal offenses is favored.' " Id. (quoting State v. McKinney , 314 S.W.3d 339, 341 (Mo. banc 2010) ). If joinder was not proper, prejudice is presumed and severance of the charges is mandatory. Love , 293 S.W.3d at 475. If joinder was proper, we will reverse the trial court's decision to deny a motion to sever only if the trial court abused its discretion. Roberts , 465 S.W.3d at 903. The propriety of joinder is fact dependent. State v. McQuary , 173 S.W.3d 663, 670 (Mo. App. W.D. 2005).
Section 545.140.2[1] and Rule 23.05[2] provide for joinder of offenses. These authorities provide alternatives that permit joinder. McKinney , 314 S.W.3d at 341. One alternative permits joinder where the charged offenses are of the "same or similar character." Another alternative allows joinder where the offenses are based on acts or transactions that are "connected." Roberts , 465 S.W.3d at 903. Because liberal joinder is favored for judicial economy, joinder is appropriate where any of the Section 545.140.2 or Rule 23.05 criteria exist. Love , 293 S.W.3d at 475-76.
The use of similar or comparable tactics is sufficient to establish that offenses are of the "same or similar character." Id. at 476. "In this context, the term 'similar' has been defined to mean '[n]early corresponding; resembling in many respects; somewhat alike ; have general likeness.' " State v. St. George , 497 S.W.3d 308, 311 (Mo. App. S.D. 2016) (emphasis added) (quoting State v. Harris , 705 S.W.2d 544, 549 (Mo. App. E.D. 1986) ). The tactics need only resemble or correspond with each other; they need not be identical. Love , 293 S.W.3d at 476. The manner in which the crimes were committed should be so similar that it is likely the same person committed all of the charged offenses. Id. Nonexclusive factors that demonstrate similar tactics include commission of the same type of offenses, victims of the same sex and age group, offenses occurring at the same locations, and *360 offenses closely related in time. Id. The mere existence of differences among the counts does not defeat joinder. Id.
"Missouri's seminal case involving joinder under the same or similar character rationale is Harris , 705 S.W.2d at 549-550." State v. Kelley , 953 S.W.2d 73, 80 (Mo. App. S.D. 1997). In Harris , the defendant was charged with three counts of first-degree robbery, one count of first-degree attempted robbery, one count of first-degree assault, and one count of armed criminal action arising out of three separate incidents occurring in the City of St. Louis. The first incident occurred around 10:30 p.m. when victim #1 was parked in front of Steak & Shake. Three men approached the car and one man pointed a gun at victim #1's face and ordered him out of the car. Victim #1 complied and the three men got into the car and drove away.
The second incident occurred eighteen days later around 9:30 p.m. while victim #2 was in the drive-up window of a McDonalds. Two armed men approached her car, one on each side. The man on the passenger side demanded her money and necklace and when she went to remove her necklace the man shot her in the shoulder.
The third incident occurred four days later at approximately 1 a.m. when victims #3 and #4 were leaving a lounge and getting into victim #3's car. A man on a nearby porch pointed a gun at them and announced a holdup, and another man came up to the car, frisked them, and took their valuables. The men fled when a police car passed by.
All six counts were tried together and the jury convicted the defendant of all charges. On appeal, the defendant argued the trial court abused its discretion in denying his motion to sever the offenses. After analyzing several cases from other jurisdictions, the Harris court concluded "that similar tactics are sufficient to constitute acts 'of the same or similar character,' thus making joinder permissible." Harris , 705 S.W.2d at 550. The Harris court held that joinder was proper because the offenses "involved a similar tactic on the part of the assailants to approach people, late at night, at gunpoint, while the victims were at their cars near a public dining place, so as to rob them and escape." Id.
More recently, this Court applied the "same or similar character" rationale in Love , 293 S.W.3d 471. In Love , the State charged the defendant with two counts of first-degree robbery and two counts of armed criminal action arising from two separate incidents. The first incident occurred around 7:15 a.m. on December 23, 2005, while victim #1 was walking to the Delmar Metrolink stop when two men walked passed him. The men then walked up behind victim #1, put a gun to his head, and went through his pockets, taking cash and his cell phone. The men also took victim #1's earring and his coat and told him if he called the police they would kill him, before running away.
The second incident occurred fourteen days later around 11:00 p.m. when victim #2 was walking near the Delmar Metrolink station. Victim #2 noticed a vehicle pass him several times that eventually pulled into an apartment parking lot. Three men then exited the vehicle and ran toward victim #2 with a gun. The men instructed victim #2 to give them his personal items. Victim #2 gave the defendant his backpack, money, check stub, and cell phone, and the defendant went through the backpack and found a red "hoodie." The defendant then told the other men he was a "blood" and to "[k]ill him." The men beat victim #2 and the defendant tried to shoot him but the gun jammed. The jury found the defendant guilty of all charges. On appeal, the defendant argued the trial *361 court abused its discretion in denying his motion to sever.
The Love court found joinder was proper because the charges were "of the same or similar character." Id. at 476. The Love court noted the robberies occurred in the same area of St. Louis near each other, within a few weeks of each other, while it was dark outside, and were committed against persons either walking to or from the same Metrolink station. Id. Moreover, "[b]oth crimes involved a robbery, both involved individual male victims, in each robbery the victim was threatened with a gun, and in each robbery the perpetrators stole money and the victim's coat." Id. The Love court found "[t]hese similarities ... sufficient to categorize the offenses as 'of the same or similar character.' " Id.
Here, given the law's favor of liberal joinder, we find that joinder of the offenses was proper as a matter of law because the offenses are of the "same or similar character." First, all three incidents involved the same type of offense: robberies at night. See Love , 293 S.W.3d at 476 (listing nonexclusive factors that demonstrate similar tactics). Second, all three robberies were closely related in time, occurring over a three week period. Id. Third, all three robberies were in the same location, i.e., the City of St. Louis. Id.
Fourth, like in Harris , in each incident similar tactics were used in that the Victims were approached at night while the Victims were in route to a destination before being stopped and robbed at gunpoint before the robber or robbers fled. See Harris , 705 S.W.2d at 550 (finding the robbery, assault, and armed criminal action offenses "involved a similar tactic on the part of the assailants to approach people, late at night, at gunpoint, while the victims were at their cars near a public dining place, so as to rob them and escape.").
The similarity of the tactics used by Scott support that joinder was proper as a matter of law. Several other cases support this conclusion. See State v. Vinson , 834 S.W.2d 824, 827 (Mo. App. E.D. 1992) (finding it proper to join two offenses when both offenses involved the robbery of a service station/food mart in St. Charles within a two-month period where defendant drew a resolver on the cashier, walked behind the counter, removed the case drawer, and fled from the store to a waiting vehicle); State v. Forister , 823 S.W.2d 504, 510 (Mo. App. E.D. 1992) (finding joinder proper where all four robberies were committed in St. Louis County within a three-week period and in each instance defendant drove a red 1963 Chrysler as a getaway car for the same accomplice who displayed a gun and demanded money); State v. White , 755 S.W.2d 363, 367-68 (Mo. App. E.D. 1988) (concluding joinder of two separate robberies was proper where in both robberies the robber was a thin, black male, who displayed a handgun and announced a robbery; ordered the victims to put their things onto the table; herded the victims into the bathroom(s) at gunpoint; and ordered one victim to hand over his automobile keys before fleeing in the that vehicle); State v. Sims , 764 S.W.2d 692, 696 (Mo. App. E.D. 1988) (finding joinder of twenty counts arising out of ten separate criminal episodes proper where the crimes all occurred in south St. Louis within a three week period and in each incident a man entered a business, drew a handgun, produced a bag from his waist area and demanded the employee fill the bag with money).
There were also several similar tactics used in two out of three of the incidents that made it likely the same person committed all the crimes. Specifically, both Incidents #1 and #2 involved one male *362 and one female victim robbed at gunpoint while it was dark within a few days of each other, the robbers went through their pockets, and the robbers only took cash, declining to take Victim #2's debit card or cigarettes or Victim #5's tote bag. See Love , 293 S.W.3d at 476 (finding joinder proper where both crimes involved a robbery within a few weeks of each other, both involved individual male victims, in each robbery the victim was threatened with a gun, and in each robbery the perpetrators stole money and the victim's coat). The robber was also wearing the same flannel coat, had his hair braided, and was described as a large African-American male in both Incidents #1 and #2. See White , 755 S.W.2d at 367-68 (considering as one factor that the robber was a thin, black male in concluding joinder of two separate robberies was proper).
In Incidents #1 and #3, the robber was on the other side of the street in the CWE before crossing over behind the victims and robbing them from behind. See Love , 293 S.W.3d at 476 (taking into account the close proximity of the area of the crimes-near the Delmar Metrolink station-and that the victims were attacked while walking to or from there in determining joinder was proper). The robber also told the victims to take off after robbing them.
Moreover, the Suburban was involved in Incidents #2 and #3 and could have been involved in Incident #1. Victim #1 testified that after he was robbed and told to start walking he heard a vehicle start. Victim #2 testified she did not see what type of vehicle the robbers got into that night. Scott's wife testified that he drove the Suburban during the time of Incident #1. From this evidence, it could be inferred a vehicle was involved in Incident #1, and therefore some sort of getaway vehicle was used in all three incidents. See Forister , 823 S.W.2d at 510 (viewing the same getaway car as a factor in finding joinder of offenses stemming from four robberies). These similarities further support that joinder was permissible.
That there were a different number of robbers and victims in one of the three incidents, i.e., two robbers and two victims for the crimes committed on December 28th and 30th versus one robber and one victim for the crimes committed on January 18th, does not overcome the similarities of the crimes. See Harris , 705 S.W.2d at 550 (finding joinder of offenses proper where each of three robbery incidents involved a different number of robbers and victims); Lytle v. State , 762 S.W.2d 830, 836 (Mo. App. W.D. 1988) (finding joinder appropriate for two acts of selling narcotics even though the defendant acted alone the first time and with an accomplice the second).
The similarities are also not overcome because Scott was also charged with kidnapping related to the January 18th incident. See State v. Cook , 637 S.W.2d 110, 111 (Mo. App. E.D. 1982) (finding no error in refusing to sever the assault and robbery charges where they were sufficiently intertwined and an integral part of the same episode when defendant shot at a police officer while fleeing the robberies). That two of the crimes occurred in the CWE while the other occurred at Grand Avenue and Broadway in St. Louis is also not sufficient to overcome the similarities. See Forister , 823 S.W.2d at 509 (finding the fact that two robberies occurred in south St. Louis County while one occurred in west St. Louis County insufficient to defeat joinder). Nor does that the first and last crimes were nearly three weeks apart. See Harris , 705 S.W.2d at 550 (joinder of six counts stemming from three robbery incidents occurring over approximately three weeks proper); Forister , 823 S.W.2d at 510 (finding joinder proper where all *363 four robberies were committed in St. Louis County within a three-week period); Sims , 764 S.W.2d at 696 (finding joinder of twenty counts arising out of ten separate criminal episodes proper where all of the crimes occurred in south St. Louis within a three week period).
Joinder does not require that the tactics used be identical; the tactics need only resemble or correspond with each other. Love , 293 S.W.3d at 476. Joinder in this case was permissible as the offenses were "of the same or similar character," and while unnecessary to our decision, we find this especially true given the "connection" between the evidence establishing Scott's guilt obtained after Scott committed the crimes on January 18th. Because of the surveillance video in the CWE the police were able to identify the Suburban Scott used in that crime. This was identified by Victims #3, #4, and #5 as the vehicle used in the crimes on December 30th and January 18th, and it could have been the vehicle Scott and his accomplice drove off in on December 28th. The identification of this vehicle was the breakthrough evidence in all three incidents as it led to the police locating Scott and arresting him, which resulted in his pretrial identification as the robber by all Victims. The vehicle also led to the discovery of the flannel coat Victims #1, #3, and #4 testified was the coat worn by Scott during the robberies on December 28th and December 30th, and to the CD case identified by Victims #3 and #4 as the CD case stolen from them on December 30th. This evidence "connected" Scott to these three incidents.
"Charges may be 'connected' for reasons other than sharing a common time or location." McKinney , 314 S.W.3d at 341. There are several factors that can "connect" offenses for joinder purposes. Id. Here, the jury heard how the police investigation unfolded and we find that joinder was proper not only because these charges were of the "same or similar character," but also because they were "connected" by the police's investigation and the evidence obtained as a result thereof. See Forister , 823 S.W.2d at 511 ("[T]he evidence establishing defendant's participation in each of the four crimes is so intertwined that a complete picture of the investigation of any of the offenses could not be presented without mention of the others."). Having found that joinder was proper as a matter of law, we still must determine if the trial court abused its discretion in denying Scott's motion to sever. Roberts , 465 S.W.3d at 903.
Scott argues that even if joinder was proper, the trial court abused its discretion in not severing the charges because he met the requirements of Rule 24.07. Scott argues he showed particularized, substantial prejudice because there were fifteen[3] charges, three incidents, five victims, two different neighborhoods, and three different dates; a different number of victims; and the Suburban was involved in the latter two crimes but not the first. Scott contends bias resulted from Victim #5's uncertainty in her identification of him as the assailant because the other victims' identifications of him were certain. Scott asserts the certainty of the other victims' identifications of him bolstered the State's evidence for his convictions related to Victim #5. The State argues that Scott cannot show prejudice because the jury acquitted Scott of five counts and the jury's explanation on the verdict form for the second-degree robbery count manifests their ability to evaluate the counts separately.
*364 The fact that joinder was permissible does not mean that joinder was proper. Roberts , 465 S.W.3d at 903. Severance may still be required to prevent substantial prejudice to the defendant if the charges are not tried separately. Id. Whether to grant severance is a decision left to the trial court's sound discretion. McKinney , 314 S.W.3d at 342. A trial court's ruling on a motion to sever will be reversed if the trial court abused its discretion and if there was a clear showing of prejudice. Id. A trial court abuses its discretion if its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id.
Severance is governed by § 545.885 and Rule 24.07. Love , 293 S.W.3d at 476. Rule 24.07 states that "[w]hen a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately." (Emphasis added). Rule 24.07 then sets forth that an offense shall be ordered to be tried separately only if (1) a written motion requesting a separate trial of the offense is filed; (2) a party makes a particularized showing of substantial prejudice if the offense is not tried separately; and (3) the court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.
Similarly, § 545.885.2 provides that "[i]f it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires." For purposes of § 545.885, "substantial prejudice" is defined as "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal."
To determine whether severance is required, courts consider the number of offenses joined, the complexity of the evidence, and the likelihood that the jury can distinguish the evidence pertaining to each offense. Roberts , 465 S.W.3d at 903. Severance is proper only after the defendant makes a particularized showing of substantial prejudice if the offense is not tried separately and after the court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense. McKinney , 314 S.W.3d at 342. Any prejudice from joinder may be overcome where the evidence regarding each crime is sufficiently simple and distinct to mitigate the risk of joinder. Id. The general allegation that the jury would likely consider evidence of guilt of one charge as evidence of guilt of another charge is not sufficient to show a particularized showing of substantial prejudice. Love , 293 S.W.3d at 477. In addition to the simplicity of the evidence, courts also weigh the impact of the jury instructions. Id.
Here, we find the trial court did not abuse its discretion in refusing to sever the charges related to the three incidents. First, while there were twelve offenses joined, the evidence was not complex and the proof on each charge was distinct and uncomplicated. See Sims , 764 S.W.2d at 697 (finding no abuse of discretion in joining twenty counts from ten incidents where the evidence relevant to each incident was distinct and not complex). It consisted primarily of the direct testimony of all Victims and police testimony documenting their investigation. Further, the trial court instructed the jury that "[e]ach count must be considered separately." See Love , 293 S.W.3d at 478 (concluding defendant *365 had not shown substantial prejudice when the evidence was simple and the jury was instructed that "[e]ach count must be considered separately.").
Moreover, the fact that the jury acquitted Scott on five counts and found him guilty of the lesser-included offense of second-degree attempt to commit robbery as to Incident #1 supports that Scott suffered no substantial prejudice by having the offenses tried together. See State v. Carroll , 745 S.W.2d 156, 159 (Mo. App. E.D. 1987) ("[T]he fact that the jury found defendant guilty on two counts [of first-degree robbery] and not guilty on the other count shows that the trial court correctly determined that defendant would suffer no prejudice from being tried on all three counts."); Sims , 764 S.W.2d at 697 (rejecting defendant's argument that substantial prejudice resulted from the joinder of the offenses because weaker identifications of defendant were buoyed by the stronger identifications where the jury found defendant not guilty on the two counts the state's witness failed to make in court identifications on). Because the jury could distinguish the evidence for each count and apply it without confusion, the trial court did not abuse its discretion in denying Scott's motion to sever. Point I is denied.
II. Cross-examination of Victim #4 Regarding Alleged Prior Inconsistent Statement
In point II, Scott argues that the trial court erred in refusing to allow him to cross-examine Victim #4 about an alleged prior inconsistent statement purportedly made by her contained in the police report. Specifically, Scott contends he should have been able to cross-examine Victim #4, who identified Scott as her robber at trial, regarding her alleged statement that "[s]he did not get a good look at him" that was contained in the police report. The State argues there was no abuse of discretion because Scott failed to establish a sufficient foundation for its admission and failed to show how he was prejudiced. We agree with the State that Scott failed to establish a sufficient foundation for the statement's admission.
The trial court is vested with broad discretion in deciding the permissible scope of cross-examination that is reviewed on appeal for an abuse of discretion. State v. Oates , 12 S.W.3d 307, 313 (Mo. banc 2000). To impeach a witness with extrinsic evidence of prior inconsistent statements, the witness must be given an opportunity to refresh his or her recollection and to admit, deny, or explain the statement. State v. Boyd , 871 S.W.2d 23, 26 (Mo. App. E.D. 1993). This allows a witness a chance to present a complete picture of his or her credibility by explaining any inconsistency. Id. To properly impeach a witness counsel must lay a foundation by quoting the statement, asking the witness whether he or she made the statement, and establishing the precise circumstances under which it was made, including to whom the witness spoke and the time and place of the statement. State v. Simmons , 515 S.W.3d 769, 775 (Mo. App. W.D. 2017) ; State v. Duncan , 397 S.W.3d 541, 543 (Mo. App. E.D. 2013).
Here, the trial court did not abuse its discretion in refusing to allow Scott to impeach Victim #4 with her purported statement in the police report. Scott failed to lay an adequate foundation to impeach Victim #4. In his offer of proof, Scott asked Victim #4 if she remembered speaking to the police the night of the robbery and to read the statement that "[s]he did not get a good look at him," but Scott never asked Victim #4 if she made the statement and did not establish the precise circumstances under which it was made. See Simmons , 515 S.W.3d at 775. Scott did not establish in the offer of proof the time *366 and place of the statement. Id. While we are able to discern from the record that the police officer who purportedly made the report had left the police department and was unavailable, there is nothing in the record about the precise circumstances under which this alleged statement was made. Nor did Scott give Victim #4 an opportunity to explain the circumstances around the statement. See Boyd , 871 S.W.2d at 26 (finding the defendant laid an inadequate foundation to cross-examine a witness about prior inconsistent statements in a police report when counsel did not ask the witness to admit, deny, or explain the statements). While Scott did ask if the police officer was lying after Victim #4 read the statement, the court informed Scott this was not a proper question and Scott's only remaining question to Victim #4 was whether she accurately read the statement. When Victim #4 responded that she had, Scott indicated he had nothing further. Without a question before her, Victim #4 said, "I didn't say it," but this did not cure Scott's failure to lay an adequate foundation and Scott did not question Victim #4 further or give her a chance to present a complete picture of her credibility by explaining any inconsistency. Rather, Scott again told the court he had nothing further of this witness. Thus, Scott did not lay an adequate foundation to impeach Victim #4. See id. ("Nor did counsel ask [the witness] to admit, deny, or explain those statements. Without such an opportunity, the rule of fairness underlying the foundation requirement is abrogated. That rule requires a witness be given a chance to present a complete picture of his or her credibility by explaining any inconsistency."). Point II is denied.
III. Identifications of Scott as the Robber
In point III, Scott avers the trial court clearly erred in overruling his motions to suppress evidence of the Victims' pretrial identifications of him as the robber and abused its discretion in overruling his objections to identification of him at trial because the photographic and physical lineups were impermissibly suggestive. Specifically, Scott argues the lineups were impermissibly suggestive because he was the heaviest person in the lineups, wore different clothing from the other participants, and his photograph had a lighter background than the others. The State contends that this issue has not been properly preserved for appellate review because Scott did not object at trial to the pretrial or in-trial identifications of him.
When a motion to suppress is denied and the evidence is subsequently offered at trial, an objection must be made at trial to the admission of the evidence. State v. Robinson , 849 S.W.2d 693, 696 (Mo. App. E.D. 1993). Absent an objection, the issue of whether the evidence should be excluded is not preserved for review. Id.
While Scott filed a motion to suppress identification, he did not object to evidence of Victims' pretrial identifications of him or to Victim #1, #2, #3, or #4's identification of him as the robber at trial. Because he did not renew his objection at trial, Scott has failed to preserve this point. Our review, therefore, is limited to plain error.
Plain error lies where we find that manifest injustice or a miscarriage of justice has resulted from trial court error. State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009). We review plain error using a two prong-standard: (1) we determine whether the trial court erred in an evident, obvious, and clear manner; and (2) we determine if the error resulted in a manifest injustice or miscarriage of justice. State v. Rucker , 512 S.W.3d 63, 66 (Mo. App. E.D. 2017). We use plain error review sparingly and the defendant bears the burden of satisfying the two-prong test. Id.
*367 There is a two-prong test for determining whether identification testimony is admissible. Foster v. State , 348 S.W.3d 158, 161 (Mo. App. E.D. 2011). First, we will look to see whether the procedures employed during those identifications were impermissibly suggestive. Robinson , 849 S.W.2d at 696. If they were, then we will consider whether those suggestive pretrial procedures affected the reliability of the identifications that were made at trial. Id. Reliability, not suggestiveness, determines the admissibility of identification testimony. Id.
Having reviewed the record, we find no error, plain or otherwise. No manifest or miscarriage of justice resulted here. There was nothing impermissibly suggestive about the procedures used during Scott's pretrial identifications. See State v. Weaver , 912 S.W.2d 499, 520 (Mo. banc 1995) ("Lineups have been held not to be impermissibly suggestive merely because of the color or characteristics of the clothing of the persons in the lineup."); State v. Chambers , 234 S.W.3d 501, 514 (Mo. App. E.D. 2007) ("[D]ifferences in age, weight, height, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness."); State v. Anthony , 857 S.W.2d 861, 867 (Mo. App. W.D. 1993) ("Missouri courts have repeatedly held that mere differences in size, color, background, or type of photographs do not render a photographic display impermissively suggestive."). Point III is denied.
Conclusion
For the reasons stated above, we affirm the judgment of the trial court.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

All references to statutes are to RSMo (2000) unless otherwise indicated.

All references to rules are to the Missouri Supreme Court Rules (2014) unless otherwise indicated.

Scott was tried on twelve charges, not fifteen.