

# Missouri Court of Appeals

## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | No. SD38032 |
| v. | ) | **Filed:  December 15, 2023** |
| JOSHUA LAMOND PARROW, | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable T. Todd Myers, Judge

**<u>AFFIRMED</u>**

A jury found Joshua Lamond Parrow guilty of the class A misdemeanor of violation of a protective order and the class D felony of tampering with electronic monitoring equipment, and found him not guilty of domestic assault in the third degree and not guilty of resisting a lawful stop.[1]  Parrow was sentenced to one year of confinement in the county jail for the violation of a protective order charge and three years' imprisonment in the Missouri Department of Corrections on the tampering charge, with the sentences to be served concurrently in the Missouri Department of Corrections.  Parrow appeals from that judgment in three points.

In point 1, Parrow claims the trial court erred in overruling his objection to the joinder of the charges in case #1931-CR00003-01 for domestic assault and for violation of a protective

---

[1] *See* §§ 455.010, 455.085, and 575.205.  All statutory citations are to RSMo (2016).

order with the charges in case #2031-CR03325-01 which were for tampering with an electronic monitoring device and for resisting a lawful stop. In point 2, Parrow claims the trial court abused its discretion in not allowing Parrow to question a police officer about Parrow's statements to the police officer denying he assaulted his ex-wife ("Ex-wife"). In point 3, Parrow claims the trial court abused its discretion in failing to declare a mistrial when Ex-wife testified "this had happened before" because it allowed the jury to hear evidence of prior bad acts. Finding no merit in Parrow's points, we affirm.

### Background

In February 2018, Parrow was served with a protective order that prohibited Parrow from being present within 500 feet of Ex-wife or Ex-wife's children. On December 31, 2018, while the protective order was still in effect, Parrow, Parrow's mother, and Ex-wife drove to Oklahoma to celebrate New Year's Eve at a casino. That night, Parrow and Ex-wife got into an argument. Ex-wife alleged Parrow began "hitting [her] in the face" and threw her phone out the car window. When they returned to Springfield, Parrow dropped Ex-wife off at her apartment, but Ex-wife later returned to Parrow's house because she wanted her "stuff back." Parrow refused to let Ex-wife in and told her he was "calling the cops." Police arrived and confirmed there was an active protective order against Parrow. Parrow admitted to an officer he had been with Ex-wife that evening. Parrow was arrested and charged with one count of violation of a protective order and one count of third-degree domestic assault.

While awaiting trial, Parrow was released on bond. As a condition of Parrow's release, the trial court ordered electronic monitoring through Court Probationary Services ("CPS"). Parrow was fitted with an electronic monitoring device, an ankle bracelet, in April 2019. On June 6, 2020, a probation officer with CPS received an electronic notice that the strap on Parrow's ankle bracelet had been tampered with. Two days later, an unknown woman went to CPS and placed a bag containing Parrow's ankle bracelet on an officer's desk. The ankle bracelet

was functioning, but the strap had been completely severed. After an unsuccessful attempt to contact Parrow by CPS, a warrant for Parrow's arrest was issued.

On June 24, 2020, an investigator for the Greene County Sheriff's Office was conducting surveillance on Parrow's last-known residence and observed a person he believed to be Parrow drive past the house. The investigator called for backup and followed the vehicle. Once backup arrived, the investigator activated his emergency lights and siren and assisted officers in attempting to stop the vehicle. The driver eventually stopped the vehicle and fled on foot. Officers were not able to apprehend the driver at that time. About a month later, Parrow was arrested and charged with one count of tampering with electronic monitoring equipment and one count of resisting a lawful stop.

The State filed a motion to consolidate the charges of domestic assault and violation of a protective order with the charges of tampering and resisting a lawful stop. The trial court granted the motion over Parrow's objection.

A jury trial was held. The jury found Parrow guilty of violating the protective order and tampering with electronic monitoring equipment but returned verdicts of not guilty on the charges of domestic assault and resisting a lawful stop. Additional evidence is set out in the analysis as necessary.

### Discussion

*Point 1: Joinder of Charges*

In point 1, Parrow claims the trial court erred in overruling his oral objection to the State's motion to joinder of the charges. Whether joinder is proper is a question of law.[2] ***State v. Roberts***, 465 S.W.3d 899, 903 (Mo. banc 2015).

---

[2] "Joinder and severance are separate and distinct issues for appellate review." ***State v. Boyd***, 659 S.W.3d 914, 922 (Mo. banc 2023) (quoting ***State v. Warren***, 141 S.W.3d 478, 486 (Mo. App. E.D. 2004)). "If joinder was not proper, prejudice is presumed and severance of the charges is mandatory." ***State v. Scott***, 548 S.W.3d 351, 359 (Mo. App. E.D. 2018). If, on the other hand, the offenses were properly joined, we normally then examine whether the trial court abused its discretion in denying the request for severance. ***State v. French***, 308 S.W.3d 266, 270 (Mo. App. E.D. 2010). However, where an

A criminal defendant has no constitutional right to be tried for one offense at a time. *State v. Holliday*, 231 S.W.3d 287, 293 (Mo. App. W.D. 2007). Additionally, liberal joinder of criminal offenses is favored as a means of achieving judicial economy. *Id.*; *Scott*, 548 S.W.3d at 359. "Determining whether separate offenses can be joined together in the same charging document is governed by Rule 23.05."[3] *Boyd*, 659 S.W.3d at 922. Under Rule 23.05:

> [a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

Section 545.140 also provides for joinder of offenses and reads in relevant part:

> two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

§ 545.140.2. "Because liberal joinder is favored for judicial economy, joinder is appropriate where any of the Section 545.140.2 or Rule 23.05 criteria exist." *Scott*, 548 S.W.3d at 359.

Both the statute and the rule permit offenses to be joined where the transactions are "connected[.]" *Roberts*, 465 S.W.3d at 903. In determining if offenses or transactions are "connected[,]" the Supreme Court of Missouri has noted:

> "Connected" is defined as: "[j]oined; united by junction, by an intervening substance or medium, by dependence or relation, or by order in a series." Black's Law Dictionary 302 (6th ed. 1990). In Webster's, "connected" is defined as: "joined or linked together [in] a series, having the parts or elements logically related . . . " Webster's International 480 (3d ed. 1981).

*State v. McKinney*, 314 S.W.3d 339, 341 (Mo. banc 2010) (quoting *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998)). Thus, offenses can be "connected" in a number of ways—"by

---

appellant does not challenge a decision to deny severance, we only consider whether joinder was proper as a matter of law and do not decide whether a trial court abused its discretion in denying severance. *See Holliday*, 231 S.W.3d at 292-93. That is the case here. Parrow did not file a motion to sever and does not argue that severance was required. He only argues joinder was improper. We limit our review to whether joinder was proper as a matter of law.

[3] All rule references are to Missouri Court Rules (2023).

time, by similarities in the manner they were committed, by motive, and 'by their dependence and relationship to one another.'" *Id.* (quoting *Morrow*, 968 S.W.2d at 109).

*McKinney* serves as a helpful analogue. There, the defendant was arrested for murder and armed criminal action. *Id.* at 340. While in jail on those charges, jailers searching defendant's jail cell discovered evidence that defendant was planning an escape. *Id.* Based on that evidence, the State added a charge of attempted escape from confinement while under an arrest for a felony to the defendant's pending charges. *Id.* The defendant filed a motion to sever the escape charge from his other charges, but it was denied. *Id.* On appeal, the defendant argued the trial court improperly joined his charges of murder and armed criminal action with his charges for attempted escape from confinement while under arrest for a felony. *Id.* at 341. Our Supreme Court disagreed. *Id.* at 342. Because the defendant's incarceration for murder and armed criminal action provided the basis for the State to charge him with attempted escape from confinement while under arrest for a felony, the charges shared a "dependence and relationship to one another" that rendered them sufficiently "connected" under Rule 23.05 and section 545.140.2. *Id.* at 341.

Likewise, Parrow's charges share a "dependence and relationship to one another" rendering them sufficiently "connected" under Rule 23.05 and section 545.140.2. As a condition of his release in the domestic assault and violation of a protective order case, Parrow was ordered to wear an ankle bracelet, which he later removed. That act gave rise to the charge of tampering with an electronic monitoring device. When officers went to arrest Parrow for violating a condition of his release, he allegedly fled, giving rise to the charge of resisting a lawful stop. Because both the tampering and resisting charges stem from Parrow violating a condition of release in the case involving the initial charges, they are sufficiently "connected" in satisfaction of Rule 23.05 and section 545.140.2. Point 1 is denied.

5

*Point 2: Exclusion of Exculpatory Statements*

In point 2, Parrow argues the trial court abused its discretion in denying his line of questioning about exculpatory statements made by Parrow to an officer. At trial, an officer who responded to Parrow's home on the night of the assault testified Parrow spoke with him and admitted to being with Ex-wife that evening. During cross-examination of the officer, Parrow's attorney asked to approach the bench and requested permission to ask the officer about Parrow's statements denying the assault. That request was denied. According to Parrow, the trial court's denial of his request violated the "rule of completeness" since it allowed the State to introduce evidence of Parrow's inculpatory statements made to the officer but deprived Parrow of the opportunity to introduce the exculpatory statements he made to the officer.[4]

The trial court has broad discretion to admit or exclude evidence at trial. ***State v. Minor***, 648 S.W.3d 721, 733 (Mo. banc 2022). The trial court abuses that discretion only if its decision to admit or exclude evidence is clearly against the logic of the circumstances then before it and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. ***Id.*** Moreover, on direct appeal, we review for prejudice, not mere error. ***Id.*** We will reverse a trial court's decision only when an alleged error is so prejudicial that the defendant was deprived of a fair trial. ***State v. McFadden***, 369 S.W.3d 727, 736 (Mo. banc 2012). "Prejudice exists when there is a reasonable probability that the trial court's error affected the outcome at trial." ***Id.***

While Parrow argues the trial court erred in prohibiting him from asking the officer about Parrow's self-serving statements denying the assault, he makes no argument that this alleged error was in any way prejudicial. In fact, Parrow was found *not* guilty of the domestic

---

[4] "The rule of completeness provides that 'where either party introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or inquire into other parts of the whole.'" ***State v. Marshall***, 410 S.W.3d 663, 672 (Mo. App. S.D. 2013) (quoting ***State v. Jackson***, 313 S.W.3d 206, 211 (Mo. App. E.D. 2010)). The purpose of this rule is to ensure no evidence is admitted out of context. ***Id.***

assault of Ex-wife.  It is axiomatic that there can be no prejudice in the exclusion of a defendant's exculpatory statements related to a particular offense where the defendant is found not guilty of that offense.  Point 2 is denied.

*Point 3:  Failure to Declare a Mistrial*

In point 3, Parrow argues the trial court abused its discretion in failing to declare a mistrial after Ex-wife testified, "it wasn't the first time this had happened[,]" because it prejudiced Parrow by allowing the jury to hear evidence of prior bad acts.  At trial, Ex-wife was asked to explain why she didn't initially tell the police the full story about the alleged assault and violation of the order of protection.  Ex-wife explained she didn't want Parrow to get in trouble and that "it wasn't the first time this had happened."  Parrow's counsel objected and asked for a mistrial.  The trial court denied the request for a mistrial, sustained the objection, and instructed the jury to disregard the testimony.  Parrow argues the trial court's failure to grant a mistrial abused its discretion because it "allowed testimony about [Parrow's] other bad acts and this made [Parrow] look bad in general and cast him in a bad light."[5]

"Mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances."  **Boyd**, 659 S.W.3d at 926 (quoting **McFadden**, 369 S.W.3d at 740).  We review a trial court's refusal to grant a mistrial for an abuse of discretion and will only grant reversal if the error is so prejudicial that it deprives the defendant of a fair trial.  **Williams**, 659 S.W.3d at 377.

Parrow does not demonstrate an abuse of discretion, let alone prejudice.  In analyzing the prejudicial effect of "uninvited evidence of other crimes," courts consider five factors:

> 1) whether the statement was, in fact, voluntary and unresponsive [to the prosecutor's questioning if the prosecutor asked the question] . . . or whether the prosecution "deliberately attempted to elicit" the comments . . .; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution, . . .; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused, . . .; 4)

---

[5] This argument mischaracterizes the record.  The trial court didn't "allow" the testimony since it sustained the objection and instructed the jury to disregard the statement.

whether the court promptly sustained defense counsel's objection to the statement, . . . and instructed the jury to disregard the volunteered statement, . . .; and 5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment "played a decisive role in the determination of guilt."

*Id.* at 379 (quoting ***State v. Graves***, 619 S.W.3d 570, 575 (Mo. App. E.D. 2021)).

Here, Ex-wife's statement was voluntary and non-responsive to the State's question about why she did not initially tell police the full story.  It was also brief, isolated, vague, indefinite and did not reference any specific crime.  Nor did the State emphasize the comment or draw attention to it in any way.  Once Parrow objected to the comment, the trial court promptly sustained the objection and instructed the jury to disregard the comment.  Finally, it is unlikely this comment played a decisive role in the determination of Parrow's guilt since Parrow was, in fact, found *not* guilty of the charge of domestic assault.  As to the charge of violation of the order of protection, there is no reasonable probability that Ex-wife's isolated, vague comment played a decisive role in the determination of Parrow's guilt on that charge since the evidence that Parrow violated the protective order by being within 500 feet of Ex-wife was overwhelming.  After all, Parrow admitted to the officer he had been with Ex-wife on New Year's Eve, Parrow's Mother testified Parrow and Ex-wife were together on New Year's Eve, and Ex-wife testified they were together on New Year's Eve.[6]  The trial court did not abuse its discretion in denying Parrow's motion for a mistrial.  Point 3 is denied.

### Conclusion

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

---

[6] Parrow's mother also identified photographs of the three of them together on New Year's Eve.